**MONSLER, Appellee,**

v.

**CINCINNATI CASUALTY COMPANY, Appellant.**

[Cite as *Monsler v. Cincinnati Cas. Co.* (1991), 74 Ohio App.3d 321.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–522.

Decided May 28, 1991.

*Carlile, Patchen, Murphy & Allison, James C. Carpenter* and *Kitt Cooper,* for appellee.

*Lane, Alton & Horst, Gregory D. Rankin* and *Karen Krisher Rosenberg,* for appellant.

MARTIN, Judge.

Defendant-appellant, Cincinnati Casualty Company, timely appeals from the judgment of the Franklin County Common Pleas Court entered on April 6, 1990, which: (a) overruled defendant's objections to the referee's report, (b) adopted the referee's report which concluded that defendant had a duty to defend the plaintiff in a certain pending federal court action, (c) ordered defendant to pay plaintiff's attorney fees and expenses, and (d) awarded plaintiff prejudgment interest.

Defendant raises eight assignments of error, to wit:

"I.   The trial court erred by admitting into evidence and considering matters outside the scope of the underlying complaint.

"II.   The trial court erred by holding that defendant/appellant is obligated by the terms of the real estate agents' errors and omissions insurance coverage to defend plaintiff/appellee against the allegations set forth in the underlying complaint.

"III.   The trial court erred by finding that the language employed in the real estate agents' errors and omissions coverage, 'negligent acts, errors, or omissions,' is ambiguous.

"IV. The trial court erred by finding that defendant/appellant is obligated by the terms of the commercial umbrella liability policy to defend plaintiff/appellee against the allegations set forth in the underlying complaint.

"V. The trial court erred by finding that the commercial umbrella liability policy provided both excess coverage and umbrella coverage to plaintiff/appellee.

"VI. The trial court erred by finding that the underlying complaint filed against plaintiff/appellee alleged an 'occurrence' within the meaning of the commercial umbrella liability policy.

"VII. The trial court erred by making its implicit finding that the commercial umbrella liability policy provided coverage for intentional acts of discrimination.

"VIII. The trial court erred by ordering defendant/appellant to pay plaintiff/appellee's attorney fees incurred in defense of the underlying case and incurred herein."

On December 15, 1986, James Green et al. filed a discrimination action in the United States District Court for the Southern District of Ohio, case No. C2–86–1550, against HER, Inc., Zoe Monsler, and Mr. and Mrs. John Fowler. The plaintiffs in this federal lawsuit seek compensatory and punitive damages arising from alleged violations of Sections 1982 and 3601 *et seq.*, Title 42, U.S.Code. The Greens allege that the defendants discriminated against them "on account of race and color" in the sale of the Fowlers' residential property in 1986. That action remains pending.

At the times in question, plaintiff, Monsler, was a licensed real estate agent affiliated with HER Real Estate, Inc. Defendant had issued certain liability insurance policies to HER which provided coverage, under certain circumstances, to salespersons of HER. Defendant denied that its policies with HER obligated it to defend Monsler in the federal litigation.

Plaintiff then filed suit on April 28, 1989, in the Franklin County Common Pleas Court in declaratory judgment under R.C. Chapter 2721, to resolve the insurance policy dispute and for breach of contract to recover her litigation expenses and attorney fees. The trial court referred this action to a referee.

An evidentiary hearing was convened by the referee on January 19, 1990, and on January 31, 1990, he issued his report containing findings of fact and conclusions of law. The referee concluded therein that defendant did have a duty to defend plaintiff, under the HER policies, in the federal lawsuit. The defendant timely filed objections to this report, which were heard by the trial judge on March 16, 1990. The matters relating to attorney fees and prejudgment interest were argued before the trial judge later on March 30 and April

6, 1990. On this latter date, the trial judge adopted the referee's report in its entirety, and entered judgment for the plaintiff on all issues. The defendant appealed to this court on May 4, 1990.

Plaintiff, Monsler, functioned as a real estate salesperson with HER, Inc., acting as the broker, during the period March 1985 to July 1987. It was during 1986 that the Fowlers contacted her to assist them in selling their residence. During this period, HER provided its sales staff with a building to operate from, office equipment, contract forms, and support staff. Monsler worked on a straight commission basis, and she was not supervised *per se* by HER on her day-to-day activities. As a condition of affiliation with HER, each salesperson was required to be insured under HER's liability policy or to provide evidence of other similar coverage satisfactory to HER. Apparently, Monsler opted for insurance coverage under the HER policies, and she paid her pro rata share of the annual premium.

Defendant had issued to HER two liability policies: (a) a comprehensive property and casualty contract in which HER was the primary insured with its salespersons listed as "additional insureds" by endorsement, and (b) an excess commercial or "umbrella" contract. The comprehensive contract contained a limited real estate agent's "errors and omissions" rider applicable to HER's sales staff acting within the scope of their duties. This provision, *inter alia,* included the defendant's duty to defend salespersons against claims arising from their "negligent" acts, errors, or omissions.

The defendant evaluated the underlying federal action against plaintiff, and concluded same alleged only intentional conduct on her part. Predicated upon that evaluation, the defendant determined it had no duty to defend plaintiff under either one of the above insurance contracts. It rejected an obligation to defend under the comprehensive policy because the policy's broad form definitions of "property damage, bodily injury, occurrence, and personal injury" were not satisfied. Defendant likewise declined to defend under the umbrella contract because the definition therein of "occurrence" had not been met and "exclusion (h)" applied. (Exclusion [h], appearing on page three, under Part II[B], exclusions, states that this policy does *not* apply "to any liability for Personal Injury arising out of discrimination including fines or penalties imposed by law, if [1] insurance coverage therefor is prohibited by law or statute, or [2] committed by or at your direction.")

The single issue presented to the trial court was whether the defendant had a contractual duty to defend the plaintiff against the allegations contained in the underlying federal discrimination complaint. As between an insurer and an insured, this type of controversy is one determinable in a declaratory judgment proceeding. *Erie Ins. Group v. Fisher* (1984), 15

Ohio St.3d 380, 15 OBR 497, 474 N.E.2d 320; *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118. In a declaratory judgment proceeding, the trial court generally may evaluate those relevant facts necessary for a construction of the insurance contract. However, in the narrow context of determining a "duty to defend," the trial court is usually confined to the "facts" as alleged in the underlying complaint or the so-called "scope of the allegations" or "pleadings" test. *Socony–Vacuum Oil Co. v. Continental Cas. Co.* (1945), 144 Ohio St. 382, 384, 29 O.O. 563, 564, 59 N.E.2d 199, 200; and *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 42, 62 O.O.2d 402, 402, 294 N.E.2d 874, 875.

The Ohio Supreme Court defined the phrase "scope of the allegations" in *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 180, 9 OBR 463, 465, 459 N.E.2d 555, 558:

"It follows that the pleadings alone may not provide sufficient factual information to determine whether the insurer has an obligation to defend the insured. It remains true that where the pleadings unequivocally bring the action within the coverage afforded by the policy, the duty to defend will attach. * * * However, *where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage,* or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim. Thus, the 'scope of the allegations' may encompass matters well outside the four corners of the pleadings." (Emphasis added; citations omitted.)

Where the allegations in the underlying action against the insured are vague, ambiguous, or incomplete, so that the "potential for coverage" exists, a duty to defend by the insurer exists. *Zanco, Inc. v. Michigan Mut. Ins. Co.* (1984), 11 Ohio St.3d 114, 11 OBR 413, 464 N.E.2d 513. Where the allegations in the underlying action against the insured are not vague or ambiguous and do not state a claim potentially or arguably within the policy coverage, no duty to defend arises. *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 68, 31 OBR 180, 182, 509 N.E.2d 74, 76. The focus is whether the allegations of the underlying complaint state a "claim" which is "potentially or arguably" within the coverage at issue.

In its first assignment of error, the defendant contends that the underlying federal discrimination complaint is narrowly drafted, not vague or ambiguous, and alleges only intentional, not negligent, acts. The defendant alleges error on the trial court's part in permitting and considering evidence from the plaintiff outside the scope of the underlying complaint, to wit: that she did not intend to discriminate against Mr. and Mrs. Green. At the

January 19, 1990 hearing, and over defendant's objections, the referee did permit testimony from Mr. James Green (and plaintiff Zoe Monsler), pertaining to her intent and knowledge. And, indeed, the referee, and subsequently the trial court, at least in part, relied upon this evidence in formulating the final decision in this case. We find the admission of, and apparent reliance upon, this extrinsic evidence to be error.

The comprehensive property and casualty policy, which includes the sales agents' errors and omissions rider, in its basic definition of "coverage," provides in pertinent part:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * bodily injury or * * * property damage to which this insurance applies, caused by an occurrence, *and the company shall have the right and duty to defend* any suit against the insured * * * *even if any of the allegations of the suit are groundless, false or fraudulent* * * *."  (Emphasis added.)

Given this contractual language, it was observed by the Ohio Supreme Court in *Preferred Risk, supra,* 30 Ohio St.3d at 114, 30 OBR at 429, 507 N.E.2d at 1124, that:

" * * * Where the insurer represents to its insured that it will undertake the defense of any claim asserting injury within coverage, even where the claim is false or fraudulent, the duty to defend may arise solely from the allegations of the underlying complaint, regardless of the true facts as they are known to the insurer. * * *"

Thus, our case *sub judice* is governed by *Willoughby Hills* and *Trainor, supra,* whereby the initial focus is not on the facts alleged in the underlying complaint but, rather, on whether the allegations of the underlying complaint state a "claim" which is "potentially or arguably" within policy coverage. See, also, *United States Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.* (1986), 31 Ohio App.3d 270, 272, 31 OBR 556, 557, 511 N.E.2d 127, 128.

Our examination of the underlying federal complaint reveals same to be clear, concise, and narrowly drafted. It unambiguously describes alleged acts of housing discrimination, on account of race and color, in violation of various provisions of Sections 1982 and 3604, Title 42, U.S.Code. Having described the various acts of discrimination attributed to the defendants named therein, including Monsler, in paragraph eleven, the complaint alleges specifically that:

"The *acts* of the *defendants* were done *intentionally* and with wrongful disregard for the rights of the plaintiffs."  (Emphasis added.)

Applying to this allegation the common and ordinary meaning of the words employed, paragraph eleven clearly modifies *all* of the prior paragraphs,

which variously describe the respective conduct of all of the defendants, including Monsler, and it characterizes all of these alleged acts as "intentional," therefore, non-negligent.

All racial discrimination, private as well as public, in the sale of or rental of property, is barred by Sections 1982 and 3601 *et seq.*, Title 42, U.S.Code. *Jones v. Alfred H. Mayer Co.* (1968), 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189; *United States v. Henshaw Bros., Inc.* (E.D.Va.1974), 401 F.Supp. 399. A real estate agency and/or individual agents may violate Sections 1982 and 3604, Title 42, U.S.Code where: (1) defendants stated to prospective black home buyers different or higher terms of sale than related to potential white buyers, (2) defendants offered different and more favorable terms of sale to white buyers after the rejection of black plaintiffs' offer, and (3) defendants never sold or listed the residence to any black person. *Hobson v. George Humphreys, Inc.* (W.D.Tenn.1982), 563 F.Supp. 344.

Even if we ignore the language contained in the Greens' underlying complaint at paragraph eleven, *supra,* their complaint is one alleging classic "disparate treatment" under federal discrimination law (*Internatl. Brotherhood of Teamsters v. United States* [1977], 431 U.S. 324, 335–336, 97 S.Ct. 1843, 1854–1855, 52 L.Ed.2d 396, 415–416), which is interpreted to imply a specific animus akin to "intent." By analogy, see *Solo Cup Co. v. Federal Ins. Co.* (C.A.7, 1980), 619 F.2d 1178; and *Castle & Cooke, Inc. v. Great American Ins. Co.* (1986), 42 Wash.App. 508, 711 P.2d 1108. An act is intentional in the context of civil liability if (1) it is done willingly, and either (2) the actor desires the results of his conduct, or (3) the actor knows, or ought to know, the result will follow from his conduct. *Snakenberg v. Hartford Cas. Ins. Co.* (1989), 299 S.C. 164, 171, 383 S.E.2d 2, 6. If so, an insurer is normally under no duty to defend such an action.

The first assignment of error is sustained.

Where no theory of recovery within policy coverage has been pleaded in a complaint against the insured, the insurer has no duty to defend. *Wedge Products, supra.* In the comprehensive property and casualty policy issued to HER by the defendant, the real estate agents' errors and omissions rider ("Coverage P") requires the defendant to defend only claims or suits resulting from "negligent" acts, errors, or omissions. No coverage is provided for intentional acts which, as we have concluded, is what the Greens' underlying complaint alleges. This complaint does not state a claim within the errors and omissions policy coverage.

The second assignment of error is sustained.

Words and phrases appearing in an insurance contract which are not specifically defined therein should be read according to their ordinary meaning unless there is some ambiguity. *Taulbee v. The Travelers Cos.* (1987), 42 Ohio App.3d 209, 537 N.E.2d 670. Where the provisions of an insurance contract are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488, 490. Applying these principles, we find no ambiguity in the error and omissions rider language ("Coverage P"), providing that "[t]his insurance applies only to claims, suits, or other action resulting from any negligent act, error, or omission * * *." The adjective "negligent" clearly modifies at the very least the noun "act" and connotes only unintentional conduct.

As observed *supra,* the underlying federal discrimination complaint only describes various "acts" attributed to the named defendants, and it does not facially allege any "error or omission." We are not, therefore, required to extend our analysis.

The third assignment of error is sustained.

Assignments of error four, five, six, and seven each relate to the trial court's construction of the commercial umbrella liability policy, and they will be addressed together. The defendant's essential contentions are two-fold: (a) no duty to defend the underlying discrimination complaint arises under the umbrella policy because that policy's coverage extends only to the limits of the coverage provided in the errors and omissions rider (or restated, if no duty to defend arises under the errors and omissions provisions, there is no duty to defend under the umbrella provisions), and (b) since the underlying discrimination complaint alleges only intentional conduct, it does not state a claim for an "occurrence" within the meaning of the umbrella policy. We agree with this construction.

Plaintiff Monsler was an "additional insured" on the comprehensive property and casualty policy and under its sales agents' errors and omissions endorsement. Therefore, she is also an "insured" under the umbrella policy at Part II(D)(g). However, that section of the umbrella policy also expressly provides:

"At your option and subject to the terms of the coverage of this insurance, any additional Insured(s) included in the underlying insurance listed in Schedule A, *but only to the extent that insurance is provided for such additional Insured(s) thereunder."* (Emphasis added.)

At Part II(A) of the umbrella policy, "coverage" is extended only to "occurrences" arising from personal injury, property damage, or advertising liability. Under Part II "coverage" of that policy, subsection (B) lists the

exclusions from coverage, and at (h) states as one express exclusion, " * * * liability for Personal Injury *arising out of discrimination* * * *."

▉ "Occurrence," as defined by the umbrella policy (Part I[G]), means " * * * *an accident, or a happening or event,* or a continuous or repeated exposure to conditions which occurs during the policy period *which unexpectedly or unintentionally* results in personal injury, property damage, or advertising liability. * * * " (Emphasis added.) This definition connotes only unintentional conduct or events, *i.e.,* negligence, and is therefore consistent with the companion "errors and omissions" rider coverage which applies only to "negligent" acts, errors or omissions, discussed *supra.* The umbrella policy therefore provides *excess* liability coverage to real estate sales agents only for unintentional "occurrences."

The commercial umbrella liability policy limits are set forth in Part II "coverage" at subsection (E) and apply to ultimate net loss for "occurrences" within that policy (a) in excess of the applicable limits of the underlying insurance (*i.e.,* the comprehensive casualty policy with errors and omissions rider), *or* (b) "occurrences" not covered by the underlying insurance, but covered by the terms of the umbrella policy. The use of disjunctive "or" suggests that this contract does not provide both excess and umbrella coverage as the trial court concluded. Umbrella policy coverage is only triggered by an "occurrence" however.

Plaintiff argues that the definition of "personal injury" appearing in the umbrella policy includes "discrimination" and, therefore, defendant must defend the underlying federal lawsuit. Indeed, the umbrella policy does include discrimination within the definition of personal injury in Part I(H)(3). However, that "definition" must be read in the context of the entire contract. A "personal injury" is covered under the umbrella policy only if it arises from an "occurrence," which must be unintentional in nature. An intentional "occurrence" resulting in a "personal injury," however defined in the contract, does not invoke coverage under the umbrella policy.

▉ In addition, we find no internal conflict within the umbrella policy provisions in which "discrimination" is referred to. In Part I of that policy, the definitional portion, "discrimination" appears as an example of "personal injury." However, in Part II "Coverage" at (B)(h), "exclusions," the umbrella policy expressly is inapplicable to personal injury liability "arising out of discrimination." A fundamental principle of contract construction requires that the document be read as a whole in order to identify the intent of the parties. A specific provision controls over a general one. *Sub judice,* the coverage exclusions portion of the umbrella policy controls over the general, definitional provisions.

In conclusion, the defendant had no duty to defend the plaintiff in the underlying federal discrimination litigation under the provisions of the comprehensive casualty policy, including its "errors and omissions" rider, or under the commercial umbrella policy. The federal complaint clearly is pleaded in terms of intentional conduct, and substantively is a "disparate treatment" action which implies intent. Neither contract can be construed to impose upon the defendant a duty to defend intentional conduct attributed to the plaintiff.

Assignments of error four, five, six, and seven are sustained.

Having so concluded, we find no basis for the trial court's award to the plaintiff of attorney fees and expenses and prejudgment interest thereon. The eighth assignment of error is, likewise, sustained.

All assignments of error having been sustained, the judgment of the trial court is reversed and this cause is remanded with instructions to the trial court to enter judgment for the defendant consistent herewith and to vacate its award of attorney fees, expenses, and prejudgment interest.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG and PEGGY BRYANT, JJ., concur.

WILLIAM J. MARTIN, J., of the Carroll County Common Pleas Court, sitting by assignment.