**In re AMERICAN FREIGHT SYSTEM, INC., Debtor.**

**AMERICAN FREIGHT SYSTEM, INC., Plaintiff/Appellee,**

v.

**ELECTROLERT, INC., Defendant/Appellant.**

**Bankruptcy No. 88–41050–11. No. 94–4253–RDR.**

United States District Court, D. Kansas.

Sept. 1, 1995.

Kurt A. Stohlgren, Hillix, Brewer, Hoff-haus, Whittaker & Wright, L.L.C., Kansas City, MO, for American Freight System, Inc.

Bruce J. Clark, Wright, Henson, Somers, Sebelius, Clark & Baker, Topeka, KS, for Electrolert, Inc.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a bankruptcy appeal. This appeal arises from an adversary proceeding filed by debtor, American Freight System, Inc. against the appellant in this matter, Electrolert, Inc., to recover freight charges allegedly owed to debtor. Electrolert asserts that the freight charges were the subject of a release agreed to by debtor and Electrolert to settle litigation filed by Electrolert against debtor before the underlying bankruptcy was filed. The bankruptcy judge denied Electrolert's motion for summary judgment finding that the language of the settlement agreement was ambiguous. After conducting a trial in which only one witness (the chief executive officer of Electrolert) was presented, the bankruptcy judge held that Electrolert had not satisfied its burden of proving the settlement covered the disputed freight charges and, therefore, held in favor of debtor. Electrolert appeals the bankruptcy judge's rul-

ings on its summary judgment motion and at trial.

The following facts appear uncontroverted. Electrolert sued debtor after a shipment of Electrolert products ("fuzzbusters") was lost. Electrolert sought $33,616.00 in damages for the lost shipment. Before filing the litigation, Electrolert continued to hire debtor to ship its goods. However, Electrolert did not pay debtor for several of the shipments. The CEO for Electrolert, Mr. Dale Smith, testified that payment for the shipments was intentionally withheld pending the resolution of the dispute over the lost shipment. The litigation filed by Electrolert was settled.

The settlement document, titled *"MUTUAL RELEASE"*, reads as follows:

This Agreement made and concluded as of the date of the last execution hereof by the parties, by and between Electrolert, Inc., American Freight Systems, Inc., Steve D. Thompson Trucking, Inc., and Service Merchandise Company, Inc., and Wholesale Supply Company, Inc., by and through their respective corporate agent,

WITNESSETH:

WHEREAS, a dispute has arisen between the parties hereto arising out of the shipment of goods from Electrolert, Inc. to Wholesale Supply Company, Inc., and Service Merchandise, Inc., by American Freight Systems, Inc., and Steve D. Thompson Trucking, Inc.; and

WHEREAS, suit was originally instituted by Electrolert, against American Freight Systems, Inc. and Steve D. Thompson Trucking, Inc., which action was subsequently removed to the United States District Court for the Southern District of Ohio, Western Division, in Case No. C3–86–539; and

WHEREAS, the parties in the action referred to herein asserted various cross-claims and third party claims for indemnity and contribution, and

WHEREAS, the parties hereto desire to resolve between themselves all claims asserted or that could have been asserted in said action;

NOW, THEREFORE, for and in consideration of the sum of Seventeen Thousand Five Hundred Dollars ($17,500.00), paid to Electrolert, Inc., Electrolert, Inc., American Freight Systems, Inc., Steve D. Thompson Trucking, Inc., Service Merchandise Company, Inc. and Wholesale Supply Company, Inc., do hereby agree to dismiss with prejudice Case Number C3–86–539 now pending in the United States District Court for the Southern District of Ohio, Western Division, said action being styled *Electrolert, Inc. v. American Freight Systems, Inc., et al.,* and each party hereto does hereby waive any and all other claims against one another arising out of the shipment of goods that was the subject of said lawsuit and each party hereto agrees to and does hereby release each of the other parties from any and all actions, causes of action, demands or claims whatsoever, whether said claim was asserted or whether said claim could have been asserted in the action described herein and arising out of the shipment of goods that formed the basis of said action.

This mutual release, upon execution of each of the parties hereto through their respective agent, constitutes a complete release of any and all claims between the parties, including claims for indemnity and/or contribution and represents a complete and full accord and satisfaction of any and all claims either asserted or that could have been asserted in the action referred to herein by any party against any of the other parties hereto.

IN WITNESS WHEREOF, the parties have hereunto set their hands the day and year opposite the signature of each party's respective agent.

Electrolert emphasizes the language in the last recital and in the last operative paragraph which indicates that the parties intended to and did waive and release all claims asserted or that could have been asserted in the action. It is undisputed that claims for the unpaid shipments could have been asserted as counterclaims in the lost shipment litigation.

Debtor emphasizes the language in the first operative paragraph which states that the parties waive any and all other claims arising out of the shipment of goods that was

the subject of the lawsuit, and any claims asserted or that could have been asserted "in the action described herein and arising out of the shipment of goods that formed the basis of said action."

In denying Electrolert's motion for summary judgment, the bankruptcy judge stated that Electrolert's construction of the settlement agreement rendered the language in the first operative paragraph superfluous. He stated that the debtor's construction of the settlement agreement, limiting its coverage to claims arising out of the lost shipment, was more reasonable. However, debtor did not ask for and was not granted judgment. Indeed, in the memorandum of decision entered after the trial, the bankruptcy judge considered the release to be ambiguous and said that both sides' interpretations were reasonable.

In summarizing the evidence at trial, the bankruptcy judge noted that no one who directly participated in the settlement discussions testified at trial. Mr. Smith testified that he had informed a sales representative of debtor that Electrolert was withholding payment on shipments pending the settlement on the lost shipment. He also testified that the actual cost of Electrolert's lost goods was $25,000.00 and that the settlement payment ($17,500.00) plus the amount of withheld freight charges approximated that figure. He stated that the settlement was intended to cover the lost shipment and the shipments upon which payment was withheld.

The bankruptcy judge found that the release was ambiguous, but that the testimony of Mr. Smith provided little evidence of Electrolert's position during settlement negotiations because he did not directly participate in the discussions. The bankruptcy court's order after trial stated: "Only those who were present for the discussion could have told the Court whether the parties discussed these bills and intended to settle them as well as all claims arising from the same transaction or occurrence as those actually pressed in the suit." The bankruptcy judge acknowledged that debtor sent no overdue bills for the shipments for which Electrolert withheld payment. But, he said this could

have been an oversight or motivated by some other reason than the settlement. The judge held for debtor and summarized his rationale as follows:

The Court remains convinced that Electrolert's interpretation of the release is a reasonable reading of its language but that AFS's more narrow reading is also reasonable. While more probative evidence supporting Electrolert's view of the settlement might have led the Court to accept its defense, the evidence that was presented has left the ambiguity of the release unresolved. Electrolert has failed to meet its burden of proof.

■ Electrolert raises two issues on appeal. First, Electrolert contends that the bankruptcy judge erred by not granting Electrolert summary judgment. In other words, Electrolert asks this court to find that the release document was not ambiguous and that it released Electrolert from liability from claims which did not arise directly from the lost shipment of goods. This is a legal question. See *Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir. 1991). Our review is de novo. *In re Unioil, Inc.*, 962 F.2d 988, 990 (10th Cir.1992).

■ The parties agree that Ohio law governs the construction of the release. In Ohio, a release is construed as a contract. See *Shifrin v. Forest City Enterprises*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992) (applying rules of contract construction to a release). As Electrolert states, "Under Ohio law, a contract is ambiguous 'only where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations.'" Doc. No. 3, quoting *Potti, supra*. We believe the contract language is susceptible to two or more reasonable interpretations.

The main operative paragraph of the release contains the limiting language barring the assertion of claims "arising out of the shipment of goods that formed the basis of said action." The following paragraph, which appears to summarize the impact of the release, contains the broader language barring the assertion of any claims "that could have

been asserted in the action." The recital clauses are not particularly helpful in determining the intent of the document. The first recital clause states that this dispute arises out of a particular shipment of goods (the lost shipment), again suggesting a narrow construction. The last recital clause states that the parties desire to resolve "all claims asserted or that could have been asserted in the action." This, of course, supports a broad interpretation.

■ Electrolert argues that this holding effectively strikes the broad release language and thereby violates the constructional rule that no contractual provision is to be wholly disregarded because it is inconsistent with other provisions unless no other reasonable construction is possible. However, the bankruptcy judge found that the same rule would have been violated if the court gave controlling effect to the broad waiver provisions. Moreover, Electrolert's favored interpretation violates the constructional rule that general terms used after specific terms are to be limited to things of the same general nature as those specifically stated. See *Kay v. Pennsylvania Railroad Co.*, 156 Ohio St. 503, 103 N.E.2d 751 (1952); *George H. Dingledy Lumber Co. v. Erie R. Co.*, 102 Ohio St. 236, 131 N.E. 723 (1921); *Monsler v. Cincinnati Casualty Co.*, 74 Ohio App.3d 321, 598 N.E.2d 1203, 1209 (1991).

Electrolert also argues that the operation of the doctrine of res judicata would render a narrow construction of the release superfluous since any claims arising from the lost shipment of goods would have been barred in any event once the litigation was closed. This language does not appear unusual to the court, even in cases where res judicata would apply to any claims following a settlement. The release explicitly refers to barring "other claims ... arising out of the shipment of goods that was the subject of [lost shipment] lawsuit." Therefore, it does not appear that the parties considered res judicata or gave serious consideration to the possibility that "other claims" would be barred by res judicata when the release language was drafted.

We conclude that the language of the release is susceptible to two reasonable interpretations and therefore is ambiguous.

Hence, we find no error in the denial of Electrolert's summary judgment motion.

■ The second issue raised by Electrolert is whether the bankruptcy judge erred by finding that Electrolert failed to carry its burden of proof. We apply a clearly erroneous standard when reviewing the bankruptcy judge's factual findings. Bankr.Rule 8013. This means the court must have a definite and firm conviction that a mistake has been committed before overturning the factual findings of the bankruptcy judge. See *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We are not entitled to reverse a factual finding simply because we would have weighed the evidence or decided the case differently. *Id.* "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.... This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Id.* at 574, 105 S.Ct. at 1511–12 (citations omitted).

■ Where a contract is ambiguous, a court will resort to extrinsic evidence in an effort to effectuate the parties' intentions. *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411, 413 (1987). Electrolert does not dispute that it had the burden of proving the parties to the release intended to waive claims not related to the lost shipment of goods.

■ The bankruptcy judge held' that the burden of proof was not sustained even though the only testimony regarding the intention of the parties was presented by Electrolert. A factual finding may be considered clearly erroneous if it is directly contrary to the only testimony presented. *Trans–Orient Marine Corporation v. Star Trading & Marine, Inc.*, 925 F.2d 566, 571 (2nd Cir.1991).

However, the ruling that Electrolert's evidence failed to satisfy its burden of proof is not directly. contrary to the testimony heard by the bankruptcy judge. "The uncommunicated subjective intentions of one party have no significance in determining the meaning of

disputed terms." *G.F. Business Equipment, Inc. v. Liston,* 7 Ohio App.3d 223, 454 N.E.2d 1358, 1361 (1982); see also, *Yearling Properties, Inc. v. Tedder,* 53 Ohio App.3d 52, 557 N.E.2d 1231, 1233 (1988). Electrolert emphasizes the testimony from Mr. Smith concerning discussions over the phone with Electrolert's attorney during the settlement negotiations. This is not evidence that his intentions were shared with the debtor when the release language was negotiated and drawn. The issue is not whether Electrolert's counsel during settlement negotiations complied with his ethical obligation to follow the directions of his client. The issue is whether these directions were shared with counsel for debtor. There is no evidence that this happened; no evidence regarding the substance and subjects of the settlement discussions. Therefore, the bankruptcy judge's finding that Electrolert failed to prove the parties intended the release to cover charges unrelated to the lost shipment is not directly contrary to the testimony of Mr. Smith and is not clearly erroneous.

For the above-stated reasons, the ruling of the bankruptcy judge is affirmed.

**IT IS SO ORDERED.**