This is an action for racial discrimination in the provision of housing in violation of Section 3601 et seq., Title 42, U.S. Code. The case comes before this court on appeal from a March 13, 1998 judgment of the Franklin County Court of Common Pleas granting defendants' motion for summary judgment. Plaintiff now raises the following seven interrelated assignments of error:
 "[I.] The trial court did not construe evidence and resolve all doubts in favor of the appellant, as it was required to do under Ohio R.Civ.P.56.
 "[II.] The trial court erred in ignoring direct evidence of discrimination.
 "[III.] The trial court erred in concluding that there was no prima facie case of discrimination because the appellant, who received a notice to vacate and was sued for eviction, left his apartment before the court hearing on the eviction.
 "[IV.] The trial court erred in concluding that appellant did not present evidence of pretext.
 "[V.] The trial court erred in completely ignoring appellant's claim that appellees had coerced, intimidated, threatened, and interfered with appellant's right to fair housing, in violation of 42 U.S.C. § 3617.
 "[VI.] The trial court erred in holding that the fact that appellees rented an apartment to appellant creates an inference that appellees did not discriminate against him.
 "[VII.] The trial court erred in ignoring as evidence of racial discrimination the fact that appellant was the only black tenant in his building because of evidence that appellees had rented apartments to blacks in other buildings."
The criterion for granting summary judgment is found in Civ.R. 56(C), which provides:
 "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *"
The Ohio Supreme Court has held that in order for a motion for summary judgment to be granted the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis original.) Dresher v. Burt (1996),75 Ohio St.3d 280, 292. In order to carry this burden:
 "[T]he movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. * * * These evidentiary materials must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. * * *" Id. at 292-293.
Accordingly, the moving party must satisfy a three-part inquiry showing: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, which conclusion is adverse to the party against whom the motion for summary judgment is made.Harless v. Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64.
Although the court is obligated to view the facts in a light most favorable to the non-moving party, Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, when a properly supported motion for summary judgment is made, the non-moving party is not permitted to rest upon the allegations or denials contained in his or her pleadings, but must come forward with specific facts showing the existence of a genuine issue for trial. Wingv. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 111, following Celotex Corp. v. Catrett (1986), 477 U.S. 317; andMorris v. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45. The non-moving party need not try his or her case at this stage, but must produce more than a scintilla of evidence in support of the claims presented. Succinctly, viewing all facts in a light most favorable to the non-moving party, the court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.Turner v. Turner (1993), 67 Ohio St.3d 337, 340.
After conducting a careful review of the record, and after construing the evidence presented in a light most favorable to plaintiff, the court concludes that defendants have failed to carry their burden of demonstrating the lack of a triable issue of fact and thus, their entitlement to summary judgment. Accordingly, for the reasons that follow, we hereby sustain plaintiff's assignments of error.
In his complaint, plaintiff alleges defendants discriminated against him in the provision of housing on account of his race by subjecting plaintiff to physical and emotional threats, and by treating him differently than similarly situated white tenants in violation of Title VIII of the Civil Rights Act of 1968, Section 3601 et seq., Title 42, U.S. Code. As noted by the trial court, "[a]ll racial discrimination, private as well as public, in the sale of or rental of property, is barred by Sections 1982 and 3601 et seq., Title 42, U.S.Code." Monsler v.Cincinnati Cas. Co. (1991), 74 Ohio App.3d 321, 328 citingJones v. Alfred H. Mayer Co. (1968), 392 U.S. 409; and UnitedStates v. Henshaw Bros., Inc. (E.D.Va. 1974), 401 F. Supp. 399. Generally, a plaintiff may prove discrimination by coming forward with direct evidence of discrimination, or by establishing a prima facie case of discrimination through the use of circumstantial evidence. In this case, the record reveals the following.
On November 26, 1994, plaintiff, Londale Washington, an African-American, rented an apartment from defendant, Darby Woods Apartments. At that time, plaintiff took delivery of the key and possession of his new apartment but was not immediately provided a copy of the lease by defendant's agent. Later that evening, plaintiff and several of his friends began moving plaintiff's belongings into his new home. However, plaintiff's moving was interrupted when Tim Mowery, one of defendants' employees, approached plaintiff to inquire whether or not plaintiff resided at Darby Woods. Plaintiff responded that he did and that he had just signed a lease that morning but had not yet been provided a copy by defendant's rental agent. Plaintiff then showed Mowery the key that operated the lock on the apartment door. Apparently satisfied, Mowery left, but returned later that evening with a Franklin Township police officer who he allowed to enter plaintiff's apartment unannounced. According to plaintiff, during the second confrontation, Mowery stated that he did not like plaintiff and that he thought that he had drugs and guns. No official action was taken by the police officer, and he and Mowery subsequently left plaintiff to continue moving his belongings.
The next day, plaintiff and his family brought the incident to the attention of Richard Upton, defendant's Director of Resident Services. Thereafter, an investigation was conducted and Tim Mowery's employment was terminated as a result of his clear breach of defendant's written policies. Although there does not appear to be any direct evidence in the record which might indicate that this initial encounter with Tim Mowery was motivated by racial discrimination, from plaintiff's perspective the incident set the tone for the remainder of the parties' relationship. In his deposition, plaintiff testified that he was scared to stay at his apartment for much of the ensuing two months, explaining that Mr. Upton had allegedly told plaintiff that he was personally watching him. Plaintiff also claimed that Upton stated that defendant's security guards were watching him, and that he had told plaintiff's neighbors to also keep an eye on him. According to plaintiff, he often saw defendant's security guards watching his apartment for extended periods of time, and felt that Upton was trying to intimidate him by "fear." Plaintiff also testified that Upton informed him that his neighbors were complaining that he was selling drugs and stolen goods out of his apartment. Plaintiff testified that he believed that these complaints were on account of his race and that all of the accusations were false.
Not surprisingly, plaintiffs testimony conflicts with the testimony given by Richard Upton. In his affidavit and deposition, Upton denied that he harassed or tried to intimidate plaintiff. He also stated that plaintiff's neighbors repeatedly complained to management about the noise and trash left by plaintiff and his guests, and that plaintiff allowed unauthorized pets and tenants to reside at his premises. The testimony given by plaintiff and Richard Upton particularly diverge as to the details of the conversation which occurred between the two in the presence of plaintiff's friend, Roosevelt Burke. According to plaintiff, on one occasion Upton came to plaintiff's apartment while Burke was there and told him that he wanted plaintiff out of the apartment because "people" had complained that a white woman with children had visited plaintiff at his apartment on several occasions. According to plaintiff, Upton stated that he did not like plaintiff having white women in his apartment and that none of plaintiff's neighbors liked it either. In support of his version of this meeting, plaintiff submitted the affidavit of Roosevelt Burke, which if believed, substantiates plaintiff's version of events. Plaintiff also testified that on or about January 18, 1995, Mr. Upton hand delivered plaintiff an eviction notice. Plaintiff alleged that Upton swore at him and frightened him.
As noted, Upton's and plaintiff's description of their communications differs dramatically. According to Upton, he began receiving complaints from residents concerning plaintiff and his guests soon after plaintiff took possession of his apartment. These complaints primarily concerned the number of guests at plaintiff's apartment during the late evening and early morning hours, noise, cursing, and trash left in the common areas by plaintiff and his guests. Upton also testified that residents believed plaintiff had an unauthorized tenant living in his apartment in violation of plaintiff's lease agreement, and that all of these complaints were taken seriously as they interfered with the quiet enjoyment of the premises by plaintiff's neighbors. While Upton admits that he spoke with plaintiff about the neighbors' complaints, he specifically denied that he cursed, made any racially discriminatory remarks, or in any way tried to intimidate or threaten plaintiff. He also testified that the decision to serve plaintiff with an eviction notice was based solely upon his investigation of the neighbors' complaints and a conversation he had with plaintiff during which plaintiff allegedly admitted that his cousin was staying with him in violation of Darby Woods' agreement.
On January 30, 1998, defendants filed their motion for summary judgment arguing that: (1) plaintiff cannot show that he was treated differently than similarly situated non-minorities; (2) plaintiff left his apartment voluntarily; and (3) plaintiff cannot prove racial discrimination or that defendants' reasons for seeking to evict plaintiff were a pretext for impermissible discrimination.
Generally, a plaintiff may prove discrimination, racial or otherwise, by coming forward with direct evidence of discrimination or by establishing a prima facie case of discrimination through the use of circumstantial evidence. In this case, the trial court did not directly address the issue of direct evidence of discrimination. Rather, the court assumed that plaintiff had presented a prima facie case of discrimination, but found that plaintiff had failed to rebut defendants' articulated non-racial reasons for seeking to terminate plaintiff's tenancy. It bears repeating at this point, that in reviewing defendants' motion for summary judgment, the court is bound to construe all evidence and every reasonable intendment in favor of plaintiff. In so doing, we find that defendants have failed to establish the absence of a genuine issue of material fact.
In response to defendants' motion for summary judgment, plaintiff produced his own affidavit and deposition testimony in addition to the affidavit of his friend, Roosevelt Burke. Construed in a light most favorable to plaintiff, if believed by the trier of fact plaintiff's evidence would establish that defendants discriminated against plaintiff on account of his race. For purposes of ruling on defendants' motion for summary judgment, we must accept such evidence as true. Accordingly, whether plaintiff's evidence is viewed as direct or indirect evidence of discrimination, viewing that evidence as true, it is clear that there exists a genuine issue of material fact as to whether defendants' action was motivated by discriminatory animus. Because only the trier of fact may determine whether to believe plaintiff's allegation that defendants discriminated against him because they, or plaintiff's neighbors, did not like white women visiting plaintiff at his apartment, or defendants' version that eviction proceedings were initiated because plaintiff was in violation of the terms of his lease agreement, we must reverse the trial court's decision granting defendants' motion for summary judgment. As such, plaintiff's assignments of error are well-taken.
For the foregoing reasons, plaintiff's assignments of error are sustained and the judgment of the Franklin County Court of Common Pleas is reversed. Accordingly, this cause is remanded for further proceedings consistent with this opinion and in accordance with law.
Judgment reversed; cause remanded.
TYACK and BOWMAN, JJ., concur,