JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Judge Nancy R. McDonnell that found appellee Nicholas Brozovic to be an insured and entitled to uninsured/underinsured motorist ("UMI") coverage under a commercial automobile insurance policy issued by appellant Transcontinental Insurance Company ("Transcontinental") to his mother's employer. Transcontinental claims it was error to find, under Scott-Pontzer v.Liberty Mut. Fire Ins. Co.[1] and Ezawa v. Yasuda Fire MarineIns. Co. of Am.,[2] that Brozovic was an insured. We reverse and remand.
 {¶ 2} On May 12, 1998, Brozovic, a passenger, was severely injured in an accident caused by his driver and received $100,000, the limit of liability coverage under the driver's comprehensive automobile insurance policy. On March 14, 2000, he filed a complaint for declaratory judgment seeking underinsured motorist coverage ("UMI") under a commercial automobile policy issued by St. Paul Fire Marine Insurance Company ("St. Paul") to his father's employer. He later amended the complaint to include CNA Insurance Company[3] ("CNA") and American Alternative Insurance Corporation ("American"), which had issued a commercial automobile insurance policy and an umbrella/excess liability policy, respectively, to United Way Services, his mother's employer. Brozovic settled his claims against St. Paul and, because his stipulated damages did not exceed the UMI coverage limits of the CNA policy, he dismissed American, leaving Transcontinental the only defendant.
 {¶ 3} Under the CNA policy, "United Way Services, ETAL" is the named insured and many affiliated groups and organizations are listed as named insureds on separate endorsements. An endorsement titled "Drive Other Car Coverage — Broadened Coverage for Named Individuals" identifies six persons who are additional policy "insureds." The endorsement states, inter alia:
 {¶ 4} "C. Changes in auto medical payments and uninsured andunderinsured motorists coverages
 {¶ 5} "The following is added to WHO IS AN INSURED:
 {¶ 6} "Any individual named in the Schedule and his or her `family members' are `insured' while `occupying' or while a pedestrian when being struck by any `auto' you don't own except:
 {¶ 7} "Any `auto' owned by that individual or by any `family member.'"
 {¶ 8} The main body of the policy sets forth the terms for "Liability Coverage" and "Physical Damage Coverage," and includes a section titled "Business Auto Conditions," which states, inter alia:
 {¶ 9} "The following conditions apply in addition to the Common Policy Conditions:
 {¶ 10} "A. LOSS CONDITIONS
 {¶ 11} "* * *
 {¶ 12} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
 {¶ 13} "a. In the event of `accident,' claim, `suit' or `loss,' you must give us or our authorized representative prompt notice of the `accident' or `loss.'
 {¶ 14} "* * *
{¶ 15} "3. LEGAL ACTION AGAINST US
 {¶ 16} "No one may bring a legal action against us under this coverage form until:
 {¶ 17} "a. There has been full compliance with all the terms of this Coverage Form;
 {¶ 18} "* * *
{¶ 19} "5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US
 {¶ 20} "If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after `accident' or `loss' to impair them."
 {¶ 21} The "Coverage Form" itself does not refer to UMI coverage, which is provided by a separate endorsement and states, inter alia:
{¶ 22} "A. COVERAGE
 {¶ 23} "1. We will pay all sums the `insured' is legally entitled to recover as compensatory damages from the owner or driver of an `uninsured motor vehicle' because of `bodily injury' sustained by the `insured' caused by an `accident.' The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the `uninsured motor vehicle.'
 {¶ 24} "2. We will pay under this coverage only if a. or b. below applies:
 {¶ 25} "a. The limits of any applicable liability bonds or policies have been exhausted by judgments or payments;
 {¶ 26} "* * *
 {¶ 27} "B. WHO IS AN INSURED
 {¶ 28} "1. You.
 {¶ 29} "2. If you are an individual, any `family member.'
 {¶ 30} "* * *
{¶ 31} "C. EXCLUSIONS
 {¶ 32} "This insurance does not apply to:
 {¶ 33} "1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described [as underinsured]."
 {¶ 34} Each party moved for summary judgment concerning coverage under the policy, and the judge found Brozovic was entitled to claim UMI benefits.
 {¶ 35} Transcontinental asserts one assignment of error:
 {¶ 36} "I. The Trial Court Erred in Granting The Plaintiff-appellee's Motion For Summary Judgment And Denying Defendant-appellant's Motion For Summary Judgment."
 {¶ 37} We review the grant of summary judgment de novo, using the same standard as the trial judge.[4] The interpretation of unambiguous written contract terms is a matter of law that we review de novo.[5]
Where ambiguity is found in an insurance contract the contract term is construed against the insurance company as drafter of the language.[6]
 {¶ 38} In Scott-Pontzer, supra, the Ohio Supreme Court ruled that, where the named insured on the declarations page was a corporation, its employees were reasonably included as insured parties because the corporate entity could act only through actual persons.[7]
Because of the ambiguity the Court held that the insurance policy extended UMI coverage to the company's employees, and Ezawa extended the principle to the employees' "family members."[8] Although the UMI endorsement here uses the same language as that in Scott-Pontzer,
Transcontinental argues that it cured the ambiguity by issuing the "Drive Other Car Coverage" endorsement, which added specific individuals as insureds and, therefore, limited the UMI endorsement's definition of an insured to only those individuals. We disagree.
 {¶ 39} In Burkhart v. CNA Ins. Co.,[9] the Stark County Court of Appeals ruled that a declarations page naming specific individuals did not cure the ambiguity addressed in Scott-Pontzer because the definition of insured was still ambiguous with respect to the named corporate entity.[10] This ruling was followed by the Lucas County Court of Appeals in Kasson v. Goodman,[11] which agreed that the ambiguity with respect to the corporation continued because its inclusion as a named insured would be "superfluous" if coverage were limited only to the specifically named individuals.
 {¶ 40} In contrast, Transcontinental argues that a reference to a specific individual on a declarations page or subsequent endorsement is sufficient to remove the Scott-Pontzer ambiguity, citing the Henry County Court of Appeals' decision in Reinbolt v. Gloor.[12] Reinbolt,
however, is distinguishable because it involved a policy issued to a sole proprietor rather than a corporation.[13] Moreover, even if the principle asserted in Reinbolt does compete with the reasoning inBurkhart, the endorsement's language does not remove the ambiguity in this policy because the endorsement itself purports to be an addition to the definition, and not a limitation. We agree that the endorsement cannot remove the ambiguity concerning who is an insured when it purports to add to, rather than limit or substitute for, the definition.
 {¶ 41} "In the construction of insurance contracts, `[w]here exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.'"[14]
 {¶ 42} Nothing in the endorsement's language specifically addresses, limits, or removes the definition of "insured" adopted inScott-Pontzer. We agree with the decisions in Burkhart and Kasson that ambiguity is not removed where an endorsement adds insured parties without addressing, removing or amending the original ambiguous language. Transcontinental's first argument is unavailing.
 {¶ 43} Transcontinental's second argument for reversal claims that Brozovic was required to give the insurer "prompt notice" of the accident in order to allow it to preserve its subrogation rights. Brozovic counters that the policy is ambiguous with respect to notice because the UMI endorsement does not require the insurer's consent before settling a claim with an underinsured motorist. However, the endorsement does require that a person seeking underinsured motorist coverage must notify the insurer of a tentative settlement with the underinsured motorist's insurer "and allow us 30 days to advance payment * * * in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle[.]"
 {¶ 44} The general subrogation clause is insufficient to undermine the specific provisions in the UMI endorsement that allow settlement without consent because, in addition to the construction of ambiguity in favor of the insured, specific provisions control over general provisions.[15] The general subrogation clause purports to forbid any action that impairs the insurer's subrogation rights, yet the specific UMI provisions allowing settlement without consent necessarily allow impairment of those rights in specific circumstances and provide a specific exception to the general clause.
 {¶ 45} Nevertheless, we agree with the analysis in Green v. TheCincinnati Ins. Co.,[16] in which the Huron County Court of Appeals agreed that the lack of a consent requirement when settling with an underinsured motorist normally would mandate coverage, but the policy in that case contained a provision that required notice of a tentative settlement and opportunity to advance funds specifically in underinsuredmotorist cases, even though consent was not required. The court found the specific reference to underinsured motorists distinguishable from the provision in Howard v. State Auto Mut. Ins. Co.,[17] and denied UMI coverage based on the failure to allow the insurer an opportunity to retain subrogation rights against the underinsured motorist.
 {¶ 46} Because the policy here contains the same provision as that found in Green, Brozovic's failure to provide notice of the settlement deprived Transcontinental of its subrogation rights in violation of the policy. However, even though an insured's breach of subrogation provisions is presumed prejudicial and, therefore, material, the presumption is not conclusive and an insured may present evidence rebutting the presumption that the insurer was prejudiced.[18] Therefore, even though we must reverse the grant of summary judgment based on the breach of the subrogation provision, Transcontinental is not entitled to judgment as a matter of law because Brozovic has not had an opportunity, pursuant toFerrando, to show a lack of prejudice. The assignment of error is sustained with respect to the grant of summary judgment to Brozovic, but overruled with respect to the denial of Transcontinental's motion for summary judgment.
 {¶ 47} The judgment is reversed and remanded for further proceedings.
It is ordered that each party shall bear their own costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J. AND JAMES J. SWEENEY, J., CONCUR.
[1] 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116.
[2] 86 Ohio St.3d 557, 1999-Ohio-124, 715 N.E.2d 1142.
[3] Transcontinental was later substituted for CNA.
[4] Civ.R. 56(C); Druso v. Bank One of Columbus (1997),124 Ohio App.3d 125, 130-131, 705 N.E.2d 717.
[5] Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107,108, 1995-Ohio-214, 652 N.E.2d 684.
[6] Scott-Pontzer, 85 Ohio St.3d at 664-665.
[7] Id.
[8] Ezawa, supra, reversing Ezawa v. Yasuda Fire Marine Ins.Co. of Am. (June 30, 1998), Franklin App. No. 97APE10-1343.
[9] Stark App. No. 2001CA00265, 2002-Ohio-903.
[10] Id. at ¶ 16.
[11] Lucas App. No. L-01-1432, 2002-Ohio-3022, at ¶ 28-33.
[12] 146 Ohio App.3d 661, 2001-Ohio-2224, 767 N.E.2d 1197.
[13] Id. at 667-668, 2001-Ohio-2224, at ¶ 19-30; see, also,Herschell v. Rudolph, Lake App. No. 2001-L-069, 2002-Ohio-1688, at ¶ 28.
[14] King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 214,519 N.E.2d 1380, citation omitted.
[15] Monsler v. Cincinnati Cas. Co. (1991), 74 Ohio St.3d 321,330, 598 N.E.2d 1203.
[16] (Dec. 7, 2001), Huron App. No. H-01-018.
[17] (Mar. 14, 2000), Franklin App. No. 99AP-577.
[18] Ferrando v. Auto-Owners Mut. Ins. Co., ___ Ohio St.3d ____, 2002-Ohio-7217, ___ N.E.2d ___, paragraphs one and two of the syllabus;Ruby v. Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159, 161,532 N.E.2d 730.