BREULEUX ET AL., APPELLEES, *v.* PENTAGON FEDERAL CREDIT UNION, APPELLANT, ET AL.

(No. 472—Decided May 4, 1983.)

*Messrs. Cross & Turner* and *Mr. Gerald L. Turner,* for appellees.

*Messrs. Smith & Menz* and *Mr. Jerome G. Menz,* for appellant Pentagon Federal Credit Union.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Clinton County.

The matter before this court involves a sum of money borrowed in 1970 by appellee, Clarence Breuleux, from appellant, Pentagon Federal Credit Union ("Pentagon"). In 1974, Breuleux accepted an offer by Security Collection Agency ("Security") of Oxen Hill, Maryland, an organization employed by Pentagon to collect the account, to pay the sum of $1,200 in return for a release from any further liability on the note.

During the summer of 1976, Pentagon learned that the owner of Security, one Rawlings, had allegedly disappeared with an undetermined amount of funds collected for Pentagon. Pentagon proceeded to recover the 2,200 accounts that had been assigned to Security for collection, and to write each debtor at his or her address of record advising that Security no longer represented Pentagon. The letters included a statement of the balance owed Pentagon, and asked that any questions regarding such balance be referred directly to Pentagon.

After waiting approximately three years for the debtors of the Security-assigned accounts to respond to the communication above, Pentagon reassigned these accounts to defendant Central Adjustment Bureau, Inc. ("Central"). Since Pentagon had no record of Breuleux's 1974 payment to Security, and since he had not responded to Pentagon's letter containing a statement of his account showing an outstanding balance due, the Breuleux account was among the ac-

counts reassigned to Central for collection.

On October 16, 1979, Central began its efforts to collect the Breuleux account. The campaign consisted of a series of dunning letters threatening legal action and intimating that such action would result in garnishment of Breuleux's wages, and in writs of execution being issued against his bank accounts, real estate, furniture and other valuable assets. Breuleux, who was residing in Germany when the collection activities began, corresponded with both Pentagon and Central on several occasions, informing them that his last outstanding obligation with Pentagon had been settled some five years earlier, and requesting clarification as to the particular debt to which the notices referred. The letters went unanswered; the warning notices continued.

At trial, appellees testified that the succession of notices, combined with the refusal of Pentagon and Central to respond to the written inquiries, caused appellee, Frances Breuleux, severe mental and emotional distress.

As a result of Pentagon's action, appellees returned to the United States in January 1980, to locate the correspondence which established that the debt to Pentagon had been paid. This trip was made at considerable expense to appellees.

Upon returning to Germany, Clarence Breuleux sent more letters to both Pentagon and Central, this time enclosing letters from Security acknowledging receipt of his payment. On March 13, 1980, almost five months after the first collection letter from Central was mailed, appellees received a letter from Pentagon's attorneys admitting that a mistake had been made.

Appellees filed suit in the Court of Common Pleas of Clinton County alleging unfounded and illegal collection tactics on the part of both Pentagon and Central, and that as a result of such tactics, appellees suffered severe distress of body and mind, and great mental anguish, embarrassment and humiliation. The complaint further alleged that the actions of Pentagon and Central were done and performed wantonly, willfully and maliciously. A verdict was subsequently rendered in favor of appellees, Clarence and Frances Breuleux, in the amount of $5,000 against Pentagon. There was no finding of fault against Central.

Pentagon now appeals from the judgment of the court of common pleas and presents the following assignment of error:

"The trial court erred as a matter of law upon overruling defendant Pentagon Federal Credit Union's motion for [a] directed verdict made at the conclusion of plaintiffs' case in chief, and renewed at the conclusion of all the evidence."

Before appellant's assignment of error can be addressed, it is necessary to resolve the question of an agency relationship *vel non* between Pentagon and Central. Appellees, in paragraph four of their complaint, allege an agency relationship between the credit union and its collection agency. Pentagon and Central, in separate answers, admit that relationship. In his charge to the jury, however, the trial judge stated that Pentagon and Central were "* * * here as separate defendants. There is no proof present of agency." Neither party objected to the instruction at the trial level. Moreover, the determination that Central was not Pentagon's agent is not prejudicial to Pentagon at the trial level or on appeal. The effect is to relieve Pentagon of direct responsibility for the actions of Central, placing the two on an employer-independent contractor basis. An independent contractor is subject to the employer's control in performance of a contract only as to the result. *Newcomb* v. *Dredge* (1957), 105 Ohio App. 417 [6 O.O.2d 178].

At the trial level, appellees presented evidence of certain collection notices received from both Pentagon and Central.

Such evidence included only two letters sent by Pentagon itself directly to the appellees. Knowledge of and consent to the various collection letters sent by Central to the appellees cannot, by virtue of the employment of Central, be imputed to Pentagon.

A directed verdict is properly granted on the evidence presented when the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion, and that conclusion is adverse to the non-moving party. Civ. R. 50(A)(4). See, also, *Metropolitan Life Ins. Co.* v. *Huff* (1934), 128 Ohio St. 469 [2 O.O. 23]. A motion for directed verdict should be overruled where from the evidence reasonable minds might reach different conclusions upon any question of fact properly at issue. *Miller* v. *Star Co.* (1937), 57 Ohio App. 485 [11 O.O. 272].

The record indicates that Pentagon sent only two letters to appellees during the course of Central's debt collection activities. The first letter, dated February 4, 1980, which contained a copy of a promissory note, was sent in response to an inquiry by Breuleux as to the subject of Central's collection activities, and was clearly not offensive in any way. The second letter, dated March 17, 1980, was from Pentagon's attorneys admitting that a mistake had been made. Malice in law requires the willful doing of an injurious act without just cause or excuse. *Bush* v. *Kelley's, Inc.* (1969), 18 Ohio St. 2d 89 [47 O.O.2d 238]. The record below is void of evidence indicating any such intentional wrongdoing on the part of Pentagon.

When Pentagon's actions are compared with actions by other creditors found by Ohio courts to constitute malicious invasions of debtor privacy, the wisdom of granting appellant's motion for directed verdict becomes insuperable. In *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60], the creditor telephoned the deb-

tor eight or nine times per day, sometimes as late as 11:45 at night, over a period of two weeks. The creditor in *Stephens* v. *Harmony Loan Corp.* (1973), 37 Ohio App. 2d 23 [66 O.O.2d 35], filed four proceedings for garnishment of the debtor's wages after it knew or should have known that the wage earner was not the debtor. In *Mills* v. *First National Credit Bureau, Inc.* (App. 1963), 27 O.O.2d 267, an agent of the credit bureau publicly called the plaintiff a liar, and refused reimbursement when shown two cancelled checks proving that the account had been paid twice. Clearly the manner in which the credit union in the case at bar handled appellees' account does not illustrate conduct that reasonable minds could find to constitute a malicious invasion of privacy.

Therefore, the appellant's assignment of error is hereby sustained and the judgment is reversed.

*Judgment reversed.*

HENDRICKSON, P.J., and JONES, J., concur.

KOEHLER, J., dissents.

KOEHLER, J., dissenting. I must dissent. While I agree with the statement of facts, my brothers have not properly applied the standard of law enunciated in *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60].

The majority opinion, herein, states:

"* * * Malice in law requires the willful doing of an injurious act without just cause or excuse. * * * The record below is void of evidence indicating any such intentional wrongdoing on the part of Pentagon." (Citation omitted.)

The majority further states:

"When Pentagon's actions are compared with actions by other creditors found by Ohio courts to constitute *malicious* invasions of debtor privacy, the wisdom of granting appellant's motion for directed verdict becomes insuperable. * * *" (Emphasis added.)

Finally, the majority concludes that:

"* * * Clearly the manner in which the credit union in the case at bar handled appellees' account does not illustrate conduct that reasonable minds could find to constitute a *malicious* invasion of privacy." (Emphasis added.)

However, malice is *not* an element of the claim of invasion of the right of privacy. In *Housh, supra,* at page 39, the Supreme Court approved the following jury instruction:

" 'Therefore, if you find from the evidence that the conduct * * * was such as to outrage *or* to cause mental suffering, shame or humiliation to a person of ordinary sensibilities, it will be your duty to return a verdict for the plaintiff * * *.' " (Emphasis added.)

*Malice* need only be proved to recover punitive damages or attorney's fees. *Housh, supra.*

The appellant herein argues that, as a matter of law, its conduct did not give rise to an actionable invasion of privacy. While the court in *Housh* states that reasonable collection procedures may be utilized to pursue a debtor, here the debt was settled almost five years before collection activities began. In addition, while the court *did* instruct the jury that no agency relationship existed between Pentagon and Central and thus Pentagon's knowledge of the *particular* collection procedures utilized cannot be presumed, it approaches the absurd to assume that a credit union as large as Pentagon cannot be charged with more than a minimal awareness of the collection process, and the threats, letters and other tactics designed to frighten and harass the debtor into paying his debts.

Appellees presented evidence of four letters to Pentagon protesting the collection process, the first being mailed in late October 1979. Construing the evidence most favorably for the appellees, one must conclude that Pentagon waited almost twelve weeks to respond to the appellees' letter and continued to allow Cen-

tral to pursue collection activities, when it had reason to know that the debt had been paid. Certainly it cannot be said, as a matter of law, that Pentagon's behavior did not amount to an actionable invasion of privacy. Thus, I feel that this case was properly submitted to the jury and that appellant's assignment of error should be overruled.