**IN RE: Steven Rolyn WHITE, Afton Dawn White, Debtor(s).**

**Jennifer Hoewischer, Plaintiff(s),**

v.

**Steven Rolyn White, Defendant(s).**

**Case No. 15–50031**
**Adv. Pro. No. 15–02115**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Signed June 23, 2016

Michael Thomas Gunner, Attorney for Plaintiff

Derek Michael Shaw, Attorney for Defendant

### MEMORANDUM OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

C. Kathryn Preston, United States Bankruptcy Judge

This cause came on for consideration of the Defendant's Motion for Summary Judgment (Doc.'s 10) ("Defendant's MSJ") filed by Steven White, and the Plaintiff's Response to Defendant's Motion for Summary Judgment and Plaintiffs Motion for Summary Judgment (Doc. # 13) ("Plaintiff's MSJ") filed by Jennifer Hoewischer in the above captioned adversary proceeding.

Jennifer Hoewischer ("Ms.Hoewischer"), the plaintiff in this adversary proceeding, seeks summary judgment on the issue of whether the debt arising from a state

court judgment against the debtor, Steven Rolyn White ("Mr. White"), for invasion of privacy is excepted from discharge under 11 U.S.C. § 523(a)(6). The Court having considered the record and the arguments of the parties, makes the following findings and conclusions.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order 05–02 entered by the United States District Court for the Southern District of Ohio, referring all bankruptcy matters to this Court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. Findings of Fact

Upon the pleadings, depositions, answers to interrogatories, admissions on file, affidavits, and other materials submitted with the motions for summary judgment, the Court makes the following findings of fact:

On October 4, 2013, Ms. Hoewischer filed a complaint against Mr. White in the Common Pleas Court of Shelby County, Ohio (the "State Court") alleging claims for intentional infliction of emotional distress and invasion of privacy. On January 14, 2014, the State Court entered a default judgment against Mr. White, reserving the issue of the amount of damages for hearing. After a hearing on damages held on March 18, 2014, the State Court entered a Decision/Judgment Entry on Damages (the "Judgment") and made the following factual findings:

Hoewischer met White at the end of 2012 while White was living in Jackson Center. Hoewischer and White began dating in early 2013. After a time, White started pressuring Hoewischer to send him nude pictures. He pressured her for some time including sending "thousands" of text messages. White offered her money and a car although he never delivered on any of those promises. After months of pressure, Hoewischer finally gave in to his requests, "so he would leave her alone." White assured Hoewischer that the pictures were for his use only and at one point agreed to delete the photographs.

White then started requesting that Hoewischer engage in sexual acts with him. Hoewischer refused. Upon her refusals, White became angry and made implied threats. Hoewischer then terminated the relationship.

Sometime later Hoewischer was messaged by an individual in California on Facebook. She then started receiving other messages from other individuals unknown to her about her body and her pictures. Some of the contacts were solicitations for sex. Hoewischer then discovered that White had posted her nude photographs on a "revenge porn" website. Not only have individuals from outside the area contacted her, multiple persons in her small community of Jackson Center have approached her about the photos. The defendant also posted her home address online. Hoewischer has attempted without success to have her photographs and information removed from that website.

At the damage hearing, Hoewischer testified as to the emotional toll that this has been upon her. Her daily mood has changed, she is now depressed and shy, she is fearful for her safety. She testified that she sought help from a local mental health provider although the evidence was unclear as to the number of times. Apparently no expenses were incurred. She is also concerned that the posting

of the photographs may preclude her from her chosen field of medical massage therapy.

Corroborating Hoewischer's testimony was that of her mother. The mother confirmed the emotional distress and anxiety. Her mother, who is also a medical massage therapist, testified about the distinct possibility that Hoewischer would not be licensed because of the posting of the photographs.

...The elements of intentional infliction of emotional distress are: 1) the defendant intended to cause emotional distress or knew or should have known that his conduct would result in serious emotional distress to the plaintiff; 2) defendant's conduct was outrageous and extreme beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; 3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and 4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

The evidence is clear that White's conduct meets the first three of the elements for intentional infliction of emotional distress.

....

[T]here is no question that the conduct of White caused Hoewischer embarrassment, annoyance, and even distress....

....

...This court finds the conduct of White outrageous, intentional and highly offensive. Further, this court finds that Hoewischer was injured by the shame, humiliation and embarrassment caused by the conduct of White such that she is entitled to damages.

Pl.' Mot. for Summ. J. Ex. 1, at 2–4. The State Court entered judgment in favor of Ms. Hoewischer for damages in the amount of $151,123.00, consisting of compensatory damages ($50,000), punitive damages ($100,000) and attorney fees ($1,123).

On January 6, 2015, Mr. White and his wife, Afton Dawn White, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In due course, the Court entered the Discharge of Debtor (Doc. # 28) whereby Mr. White and his wife were granted a discharge under 11 U.S.C. § 727 of the Bankruptcy Code. On April 10, 2015, Ms. Hoewischer timely filed a Complaint to Determine Dischargeability of Debt (Doc. # 1) (the "Complaint"), seeking a determination that the debt represented by the Judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

In Plaintiff's MSJ, Ms. Hoewischer argues that the judgment entered by the State Court is entitled to preclusive effect. In contrast, Mr. White argues that the default judgment entered by the State Court is not entitled to preclusive effect because: (1) there is no evidence that the State Court rendered the Judgment based on evidence submitted beyond the pleadings; (2) the Judgment lacks any express findings of fact and conclusions of law; and (3) the matter was not actually litigated.

## III. Discussion

### A. Standard of Review for Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party

seeking summary judgment bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the movant satisfies this burden, the nonmoving party must then assert that a fact is genuinely disputed and must support the assertion by citing to particular parts of the record. *See* Fed.R.Civ.P. 56(c)(1). The mere allegation of a factual dispute is not sufficient to defeat a motion for summary judgment; to prevail, the non-moving party must show that there exists some genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding a motion for summary judgment, all justifiable inferences must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

The Sixth Circuit Court of Appeals has articulated the following standard to apply when evaluating a motion for summary judgment:

> [T]he moving [party] may discharge its burden by "pointing out to the ... court ... that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its [position]. "The mere existence of

a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir.1997) (citations omitted). A material fact is one whose resolution will affect the determination of the underlying action. *See Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir.1996). An issue is genuine if a rational trier of fact could find in favor of either party on the issue. *See Schaffer v. A.O. Smith Harvestore Prods., Inc.*, 74 F.3d 722, 727 (6th Cir.1996). "The substantive law determines which facts are 'material' for summary judgment purposes." *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir.1994). In determining whether each party has met its burden, the court must keep in mind that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548.

## B. 11 U.S.C. § 523(a)(6)—Willful and Malicious Injury

Section 523 of the Bankruptcy Code provides, in relevant part, as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt-
>
> ...
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6). Because the word "willful" in the statute modifies the word "injury," the United States Supreme Court has concluded that § 523(a)(6) requires a "deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*,

523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). "[T]he actor must intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 61–62, 118 S.Ct. 974 (citation omitted). Moreover, the Supreme Court noted that "the (a)(6) formulation triggers in the lawyer's mind the category '*intentional torts*,' as distinguished from negligent or reckless torts." *Kawaauhau*, 523 U.S. at 61, 118 S.Ct. 974 (emphasis added). In addition, the Sixth Circuit Court of Appeals has observed:

> Debts arising out of these types of misconduct satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises.

*Steier v. Best (In re Best)*, 109 Fed.Appx. 1, 5 (6th Cir.2004) (footnote and citations omitted); *see also Pion v. Bean (In re Pion)*, 2008 WL 2756478, at *1, 2008 U.S.Dist. LEXIS 53018, at *2 (D.Vt.2008) (holding that "the [debtors'] conduct surrounding the various trespass claims, invasion of privacy claim, punitive damages, and contempt order fits easily within § 523(a)(6)'s willful and malicious injury standard." (citing *Kawaauhau*, 523 U.S. at 63–64, 118 S.Ct. 974)). Under Ohio law, "an actionable invasion of the right of privacy is an intentional tort analogous to trespass and battery in protection of personal integrity." *McCormick v. Haley*, 37 Ohio App.2d 73, 78, 307 N.E.2d 34, 38 (Ohio Ct.App.1973) (internal quotation marks and citation omitted).

██ Willfulness is shown when it is demonstrated that the debtor either had a desire to cause the consequences of his act, or believed that injury was substantially certain to result from his conduct. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir.1999). *See also Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir.2001). The focus is on the debtor's state of mind. Damages arising from conduct which is reckless or negligent do not fall within the purview of § 523(a)(6). *Kawaauhau*, 523 U.S. at 59, 118 S.Ct. 974. The Sixth Circuit Bankruptcy Appellate Panel has opined that "the first prong of Ohio's test for intentional infliction of emotional distress, is nearly identical to the level of intent required by the Sixth Circuit in *In re Markowitz*." *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 923 (6th Cir. BAP 2000).

██ The requirement of maliciousness is met when it is demonstrated that (1) the debtor has committed a wrongful act, (2) the debtor undertook the act intentionally, (3) the act necessarily causes injury, and (4) there is no just cause or excuse for the action. *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226, 1228 (6th Cir.1991); *Jercich*, 238 F.3d at 1209. "Under § 523(a)(6), a person is deemed to have acted maliciously when that person acts in conscious disregard of his duties or without just cause or excuse." *Gonzalez*, 252 B.R. at 923 (citation omitted). Furthermore, "[u]nder Ohio law, punitive damages are awarded upon a finding of actual malice." *Gonzalez*, 252 B.R. at 923 (citing *Malone v. Courtyard by Marriott Ltd. P'ship*, 74 Ohio St.3d 440, 659 N.E.2d 1242, 1247 (Ohio 1996)).

With respect to Ms. Hoewischer's claim for intentional infliction of emotional distress, the State Court determined that (1) Mr. White intended to cause emotional distress or knew or should have known that his conduct would result in serious emotional distress to Ms. Hoewischer; (2) Mr. White's conduct was outrageous and extreme beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; and (3) Mr. White's conduct was the proximate cause of Ms. Floewisch-

er's psychic injury. *See* Pl.'s Mot. for Summ. J. Ex. 1, at 3.[1] The State Court ultimately did not determine that Mr. White was liable for intentional infliction of emotional distress. The State Court did, however, determine that Ms. Hoewischer was entitled to damages under a claim for invasion of privacy. *See* Pl.'s Mot. for Summ. J. Ex. 1, at 4. In so doing, the State Court specifically stated in part:

> This court finds the conduct of [Mr.] White outrageous, *intentional,* and *highly offensive.* Further, this court finds that [Ms.] Hoewischer was injured by the shame, humiliation and embarrassment caused by the conduct of [Mr.] White such that she is entitled to damages.

Pl.'s Mot. for Summ. J. Ex. 1, at 4 (emphasis added).

 The Judgment by the State Court sets forth facts and conclusions which establish, as a matter of law, that Mr. White's actions constituted willful and malicious injury. "[A]n injury is willful and malicious where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Shcolnik v. Rapid Settlements Ltd. (In re Shcolnik),* 670 F.3d 624, 629 (5th Cir.2012) (internal quotation marks omitted) (citation omitted). The State Court determined that all the elements of invasion of privacy were satisfied, which includes intentional publication. Certainly, Mr. White had to intentionally post the photos to the website; such an act cannot be done accidentally. In addition, the State Court found that Mr. White posted the nude photographs on a " 'revenge porn' website." *Id.* This Court finds that the act of posting

pictures of such a private nature to a public website without authority to do so is substantially certain to cause harm. No other purpose can be served by doing so. Further, the fact that the State Court characterized the website as a *"revenge porn "* website further confirms that Mr. White possessed a subjective motive to cause harm. Revenge is defined in part as follows: "1: to inflict harm or injury in return for (as an injury or insult): ... 2: to avenge or seek vengeance for a wrong done (oneself or another). ... 2: ... vindictive retaliation...." *Webster's Third New International Dictionary* 1942 (2002). The act of posting photographs to such a website leaves no doubt that Mr. White intended anything but to harm Ms. Hoewischer.

The requirement of maliciousness is met when it is demonstrated that (1) the debtor has committed a wrongful act, (2) the debtor undertook the act intentionally, (3) the act necessarily causes injury, and (4) there is no just cause or excuse for the action. *Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226, 1228 (6th Cir.1991); *Jercich,* 238 F.3d at 1209. In this case, the State Court determined that Mr. White committed a wrongful act (i.e., invasion of privacy). Pl.'s Mot. for Summ. J. Ex. 1, at 4. The State Court also determined that Mr. White intentionally caused the photographs to be published. *Id.* This Court further finds that invasion of privacy, as an intentional tort, necessarily causes injury; to be sure, the State Court determined that Mr. White's conduct caused Ms. Hoewischer injury (i.e., shame, humiliation and embarrassment). *Id.* And last, there is no just cause or excuse for Mr. White's

---

1. Though the State Court determined that Mr. White's conduct satisfied three of the four elements for a claim of intentional infliction of emotional distress, it ultimately held that the evidence did not support a finding that Ms. Hoewischer's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. *See* Pl.'s Mot. for Summ. J. Ex. 1, at 4.

conduct because the photographs were of no legitimate public concern. Moreover, the State Court awarded punitive damages in the amount of $100,000 which indicates the State Court determined actual malice existed. Accordingly, this ·Court finds Mr. White's conduct to be willful and malicious for purposes of 11 U.S.C. § 523(a)(6).

### C. Applicability of Collateral Estoppel to the Judgment

"The doctrine of collateral estoppel, also referred to as issue preclusion,[2] prevents a party from relitigating issues that were actually litigated in a prior proceeding. The doctrine is based on the efficient use of judicial resources and on a policy of discouraging parties from ignoring actions brought against them." *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 920 (6th Cir. BAP 2000). "[C]ollateral estoppel principles ... apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner*, 498 U.S. 279, 285, n. 11, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991). "The· full faith and credit principles of 28 U.S.C. § 1738 require us to look to state law to determine whether the Ohio courts would give preclusive effect to the judgment in question...." *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (6th Cir. BAP 2002) (citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir. 1999)).

The Bankruptcy Appellate Panel for the Sixth Circuit has determined that there are four prerequisites to the application of collateral estoppel under Ohio law: 1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue

must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in the present suit must have been identical to the issue in the prior suit; 4) The party against whom estoppel is sought was a party or in privity with a party to the prior action.

*Sweeney*, 276 B.R. at 189 (quoting *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 921 (6th Cir. BAP 2000)),

After examining how Ohio courts apply collateral estoppel· based on default judgments, the Bankruptcy Appellate Panel for the Sixth Circuit observed:

It ... appears that (1) default judgments may have preclusive effect in Ohio as to an issue that was the subject ·of an "express adjudication," and (2) an unanswered complaint and the default judgment based on it do· not, by themselves, constitute an express adjudication. [I]t seems from subsequent cases that an "express adjudication" is one that expressly finds something.

*Sweeney*, 276 B.R. at 193. At least one bankruptcy court performed a similar analysis of the preclusive effect given default judgments by the courts of Ohio. See *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380 (Bankr.N.D.Ohio 1999). The court in *Robinson* determined that "under Ohio law an absolute bar against applying the collateral estoppel doctrine [based on] a default judgment is not appropriate." *Robinson*, 242 B.R. at 387. The court further stated:

[G]iven the Court's concern against rendering the "actually litigated" requirement of the collateral estoppel doctrine superfluous, this Court will only permit

---

**2.** The Sixth Circuit has stated a preference for the use of the term "issue preclusion" instead of the term "collateral estoppel." *Heyliger v. State Univ. and Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir.1997). *See also Barnes v. McDowell*, 848 F.2d 725, 728 n. 5 (6th Cir.1998). Both terms may be used in this opinion.

the collateral estoppel doctrine to apply to an Ohio state court default judgment if the following two conditions are satisfied:

First, the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, must actually make findings of fact and conclusions of law which are sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding. In addition, given other potential problems that may arise with applying the collateral estoppel doctrine to default judgments (e.g., due process concerns), this Court will only make such an application if the circumstances of the case would make it equitable to do so.

*Robinson,* 242 B.R. at 387 (citation omitted). In adopting the basic standard enunciated in *Robinson,* the Bankruptcy Appellate Panel for the Sixth Circuit determined ·that:

[T]he rule established in *Robinson* is that the state court must decide the merits of the case, and the court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment. These need not be entered in any special or formal way, but the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect.

*Sweeney,* 276 B.R. at 194. In the instant case, the four requirements for application of the collateral estoppel doctrine are satisfied.

### 1. Full and Fair Opportunity to Litigate the Issue

Mr. White was afforded a full and fair opportunity to respond to Ms. Hoewischer's causes of action in the State Court. In fact, the State Court specifically noted in the Judgment that:

[Mr.] White had e-mailed this court's court administrator a request for continuance of the hearing [on damages]. The e-mail was received after business hours the day before the scheduled hearing and not brought to the attention of the court until a few moments before the scheduled hearing. No motion was filed with the clerk of this court requesting a continuance of the hearing. The court, upon reflection, determined to proceed with the hearing on damages.

Pl.'s Mot. for Summ. J. Ex. 1, at 1. These findings by the State Court clearly evidence the fact that Mr. White had notice of the damages hearing being held by the State Court on February 20, 2014, and yet chose not to appear. Therefore, Mr. White was given a full and fair opportunity to litigate, and the fact that he chose not to appear during the proceedings is of no consequence. *See Wagner v. Schulte (In re Schulte),* 385 B.R. 181, 190 (Bankr. S.D.Ohio 2008) (holding that the debtor was afforded a full and fair opportunity to litigate regardless of whether he availed himself of same because the debtor had notice of the proceedings).

### 2. Actually Litigated and Necessary to Final Judgment

The willful and malicious injury by Mr. White was actually litigated and necessary to the final Judgment.

[T]he rule ... is that the state court must decide the merits of the case, and the court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment.· These need not be entered in any special or formal way, but the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect.

*Sweeney,* 276 B.R. at 194. The State Court held a damages hearing on February 20, 2014, at which it took testimony from Ms. Hoewischer and her mother. Pl.'s Mot. for Summ. J. Ex. 1, at 1. Thus, Ms. Hoewischer actually submitted admissible evidence apart from her pleadings to the State Court. The State Court then made a determination on the merits of the case as evidenced by its findings of fact and conclusions of law stated in the Judgment. Relying on the evidence, the State Court specifically found Mr. White's conduct toward Ms. Hoewischer to be "outrageous, intentional, and highly offensive" which it concluded satisfied (1) three of the four elements for a cause of action for intentional infliction of emotional distress and (2) all five elements for invasion of privacy. Pl.'s Mot. for Summ. J. Ex. 1, at 3–4. The Judgment sets forth analysis and final conclusions of law. Accordingly, the State Court clearly made an express adjudication and determination on the merits. And finally, the willfulness and maliciousness of the injury to Ms. Hoewischer by Mr. White was necessary to the Judgment as it was in fact the basis for the State Court's conclusion that Mr. White's actions constituted tortious invasion of privacy. Moreover, a finding of malice is

required to award punitive damages in Ohio, and the State Court awarded $100,000 in punitive damages to Ms. Hoewischer. Accordingly, a finding of malice was necessary for the Judgment.

### 3. Identical Issues in Prior Action

 The issues involved in the prior suit before the State Court are identical to the issues involved in the present case before this Court.

The third prong of Ohio's collateral estoppel test requires that the issue involved in the present litigation must have been identical to the issue involved in the prior suit. In a dischargeability action, this generally means that if the factual issues in the state court proceeding were determined "using standards identical to those in the dischargeability proceedings, then collateral estoppel ... [will] bar re-litigation of those issues in the bankruptcy court." *Spilman v. Harley,* 656 F.2d 224, 226 (1981); *See also Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). This analysis necessarily entails comparing the definitions of willful and malice as they have been interpreted pursuant to Ohio tort law, versus the interpretations given under 11 U.S.C. § 523(a)(6).

In Ohio, the term willful, as it pertains to intentional torts, is generally synonymous with the term intentional. *Monsler v. ˙Cincinnati Cas. Co.,* 74 Ohio App.3d 321, 328, 598 N.E.2d 1203, 1207 (1991); *See also Payne v. Vance,* 103 Ohio St. 59, 133 N.E. 85 (1921). In Ohio, an act is done intentionally if "committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." *Jones v. VIP Dev. Co.,* 15 Ohio St.3d 90, 95, 472 N.E.2d 1046, 1051 (1984). By comparison, the United States Supreme Court in *Kawaauhau v.*

*Geiger* stated that the term willful, under § 523(a)(6), "takes a deliberate or intentional injury, not merely ... a deliberate or intentional act that leads to injury," 523 U.S. 57, 118 S.Ct. 974, 976, 140 L.Ed.2d 90, 92 (1998). A close examination of the two definitions shows Ohio's interpretation specifically allows for liability based upon intentional acts the defendant believes are substantially certain to cause injury. On the other hand, the Supreme Court's decision in *Kawaauhau* does not specifically state whether this is allowed. However, this Court finds, based upon the following analysis, that the Supreme Court's holding in *Kawaauhau* does encompass acts a defendant knows are substantially certain to cause injury.

In *Kawaauhau*, the United States Supreme Court explained that the meaning of willful under § 523(a)(6) was not intended to apply to the "wide range of situations in which an act is intentional, but the injury is unintended." *Id.* Thus, in *Kawaauhau*, the Supreme Court was eliminating any possibility of negligent or reckless acts falling within § 523(a)(6)'s exceptions to discharge. *Id.* at 977. However, in *Kawaauhau* the Supreme Court was not trying to eliminate intentional torts, such as assault and battery, from being excepted from nondischargeability under § 523(a)(6). For example, in *Kawaauhau* the Court specifically stated that, "§ 523(a)(6)'s formulation triggers in the lawyer's mind the category intentional torts." *Id.* at 975. In tort law it is a generally accepted principle that liability is imposed, for an intentional tort, for acts done with, (1) the intent to cause harm, and (2) acts the defendant knows are substantially certain to cause harm. *Ammons v. Dade City, Florida,* 594 F.Supp. 1274, 1302 (M.D.Fla.1984); *In re Healthco Intern. Inc.,* 195 B.R. 971, 986 (Bankr.D.Mass.1996), citing RESTATEMENT (SECOND) OF TORTS § 8A; *see also Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). Consequently, it would be difficult to suppose that the Supreme Court's ruling in *Kawaauhau* only includes acts done with the intent to cause injury, and would not include intentional acts that a defendant knows are substantially certain to cause injury. Accordingly, this Court finds that Ohio's definition of willful is sufficiently analogous to the United States Supreme Court's definition of willful in *Kawaauhau,* so that an Ohio state court's finding of willful conduct, as it pertains to an intentional tort, will collaterally stop a party from re-litigating that issue in a subsequent proceeding.

*Murray v. Wilcox (In re Wilcox ),* 229 B.R. 411, 417–18 (Bankr.N.D.Ohio 1998) (alteration in original) (footnotes omitted). Following the Supreme Court's decision in *Kawaauhau,* the Sixth Circuit Court of Appeals further defined "willful and malicious injury" as follows:

> Although the Supreme Court identified a logical association between intentional torts and the requirements of § 523(a)(6), it neither expressly adopted nor quoted that portion of the Restatement discussing "substantially certain" consequences. Nonetheless, from the [Supreme] Court's language and analysis in *Geiger,* we now hold that unless "the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it," *Restatement (Second) of Torts* § 8A, at 15 (1964), he has not committed a "willful and malicious injury" as defined under § 523(a)(6).

*Markowitz v. Campbell (In re Markowitz ),* 190 F.3d 455, 464 (6th Cir.1999). "[T]he first prong of Ohio's test for inten-

tional infliction of emotional distress, is nearly identical to the level of intent required by the Sixth Circuit in *In re Markowitz*." *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 923 (6th Cir. BAP 2000).

In this case, the State Court determined that the evidence before it was clear that Mr. White's conduct met the first three elements for intentional infliction of emotional distress, and the State Court found Mr. White liable for the intentional tort of invasion of privacy. Accordingly, this Court finds that the standards used in the State Court and this Court for determining willfulness are identical for purposes of determining whether the Judgment should be given preclusive effect.

 Likewise, the conclusion is the same when analyzing the standards used for determining malice.

> Under Ohio law malice means the willful doing of a wrongful act without just cause or excuse. *Bush v. Kelley's Inc.*, 18 Ohio St.2d 89, 92, 247 N.E.2d 745, 747–748 (1969); *Breuleux v. Pentagon Fed. Credit Union*, 10 Ohio App.3d 33, 35, 460 N.E.2d 306, 309 (1983). Similarly under § 523(a)(6) malice means "in conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986), citing *Tinker v. Colwell*, 193 U.S. 473, 486, 24 S.Ct. 505, 508, 48 L.Ed. 754 (1904); *First Bank of Monroe v. Afonica*, 174 B.R. 242 (Bankr.N.D.Ohio 1994). Consequently, as the two standards are almost identical, a party who has already litigated the issue of malice in an Ohio state court will be collaterally estopped from re-litigating that issue in a dischargeability proceeding in [the bankruptcy court].

*Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 418–419 (Bankr.N.D.Ohio 1998). As previously discussed, the State Court awarded punitive damages in the prior action, which can only be awarded if malice is found to exist. Accordingly, because the standards for malice are almost identical and the State Court determined malice was present in the prior action, Mr. White is estopped from litigating that issue before this Court. For the purposes of determining whether the Judgment is entitled to preclusive effect, this Court finds that the issues before the State Court were the same as the issues before this Court.

### 4. Party to Prior Action

The final element of Ohio's collateral estoppel test requires that the party against whom estoppel is sought was a party or in privity with a party to the prior action. This requirement has clearly been met.

Ms. Hoewischer has satisfied all the elements necessary for the doctrine of collateral estoppel to apply. Accordingly, the Judgment entered by the State Court is entitled to preclusive effect in this adversary proceeding, and Mr. White is collaterally estopped from relitigating the issue of whether the Judgment arose from a willful and malicious injury.

### IV. Conclusion

For the foregoing reasons, the Court finds that there exist no genuine issues of material fact and Ms. Hoewischer is entitled to judgment as a matter of law. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Doc. # 10) filed by Steven White is **DENIED.** It is further

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment (Doc. # 13) filed by Jennifer Hoewischer is **GRANTED.** A separate final judgment

will be entered in accordance with the foregoing.

**IT IS SO ORDERED.**