[Cite as *Hanuman Chalisa, L.L.C. v. Bomar Contracting, Inc.*, 2022-Ohio-1111.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Hanuman Chalisa, LLC,              :

         Plaintiff-Appellant,          :           No. 20AP-406
                                                  (C.P.C. No. 17CV-5325)

v.                                       :

                                                    (REGULAR CALENDAR)
BoMar Contracting, Inc. et al.,      :

         Defendants-Appellees.       :

---

D E C I S I O N

Rendered on March 31, 2022

---

**On brief:** *Sanjay K. Bhatt*, for appellant. **Argued:** *Sanjay K. Bhatt.*

**On brief:** *Billmaier & Cuneo, LLC,* and *Jacob M. Lowenstein*, for appellees. **Argued:** *Jacob M. Lowenstein.*

---

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Plaintiff-appellant, Hanuman Chalisa, LLC appeals from a judgment of the Franklin County Court of Common Pleas, in favor of defendants-appellees, BoMar Contracting, Inc. et al. ("BoMar"). For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On November 25, 2015, the parties executed a written agreement for the construction of a hotel in Columbus, Ohio. Appellant, Hanuman Chalisa, LLC, is identified as "Owner" in the contract documents and BoMar is identified as "Contractor." Robert L. Myers and Mary K. Grant, as guarantors of BoMar, executed personal guarantees respecting BoMar's work on the construction project.

{¶ 3} The contract, drafted by Myers, incorporated an American Institute of Architects ("AIA"), form A101-2007, signed and initial by all parties, and an unsigned AIA

form A201-2007, setting forth "General Conditions of Contract for Construction." The contract included a guaranteed maximum price of $5,172,701 and a "Cost Breakdown Worksheet."[1] The Date of Commencement was to "be determined after a full set of documents have been received by owner's architect and when contractor records the notice of commencement * * *." According to the contract, the work was to be "[s]ubstantially complet[ed]" within 310 days of the "date of commencement." (Sept. 22, 2021 Pls. Ex. A at 2-3.)

{¶ 4} BoMar did not receive the final complete plans stamped by the City of Columbus until June 7, 2016. Accordingly, June 7, 2016, became the official date of commencement.

{¶ 5} The contract required BoMar to submit payment applications on the prescribed AIA form. There is no dispute that the first ten pay applications were submitted and paid in a timely fashion. BoMar's eleventh pay application, submitted on or about October 10, 2016, identified work completed through September 25, 2016. The eleventh pay application was not approved or paid. Appellant, however, subsequently paid BoMar $150,000, and paid an additional sum of $386,461.73 directly to BoMar's subcontractors and materialmen. (Mar. 8, 2019 Stipulations at 2.)

{¶ 6} By letter dated December 19, 2016, appellant terminated the contract effective December 27, 2016. The stated reason for the termination was alleged deficiencies and delays in BoMar's work. As of the date of termination, BoMar had been paid $2,370,677.55, for work completed on the project.

{¶ 7} On June 14, 2017, appellant filed a complaint against BoMar alleging breach of a construction contract and personal guarantee. According to appellant's complaint, BoMar breached the agreement by falling behind schedule, billing for work either not performed at all or not completed in accordance with BoMar's pay applications, permitting substandard work that was inconsistent with contract plans and specifications, requesting change orders for work within the original scope of work, and not engaging sufficient numbers of skilled workers to perform work in a proper manner. It is further alleged by appellant that BoMar failed to pay subcontractors and material suppliers, which resulted in the filing of mechanic's liens against the property.

---

[1] Due to approved change orders, the contract price at termination was $5,353,212.50.

{¶ 8} On August 17, 2017, BoMar filed an answer to the complaint and a counterclaim alleging breach of contract, unjust enrichment, and quantum meruit.

{¶ 9} The parties waived jury trial and on January 28, 2019, a magistrate conducted a two-day bench trial. One of the threshold issues at trial was whether appellant terminated the contract "for cause" or "for convenience," as those terms are used in the contract.

{¶ 10} On January 8, 2020, the magistrate issued a decision in favor of BoMar on the complaint and the counterclaim. The magistrate found that appellant terminated the contract for convenience rather than for cause. The magistrate then recommended judgment for BoMar in the total amount of $390,167.57.

{¶ 11} On April 20, 2020, appellant timely filed objections to the magistrate's decision. On July 29, 2020, the trial court issued a decision and judgment entry overruling appellant's objections to the magistrate's decision and entering judgment for BoMar on the counterclaim in the total amount of $390,167.57.

{¶ 12} Appellant timely appealed to this court from the July 29, 2020 judgment.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Appellant assigns the following as trial court error:

> [1.] The trial court erred when it found that the pre-printed AIA-201-2007 document, which form is commonly used throughout the construction industry, contained a "typographical error" and thereupon, modified the terms of the parties' agreement.
>
> [2.] The trial court erred in awarding Appellee BoMar 25% overhead and profit.
>
> [3.] The trial court erred in awarding 25% Profit on the outstanding invoices.

## III. STANDARD OF REVIEW

{¶ 14} The interpretation and construction of a written contract are questions of law. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. Accordingly, "a de novo standard of review applies to matters of law, including the interpretation and construction of written contracts." *Gatling Ohio, LLC v. Allegheny Energy Supply Co., LLC*, 10th Dist. No. 17AP-188, 2018-Ohio-3636, ¶ 12, citing *Long Beach*

*Assn. v. Jones*, 82 Ohio St. 3d 574 (1998). "Under the de novo standard, the court of appeals gives no deference to a trial court's interpretation of legal issues." *Id.,* citing *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9.

## IV. LEGAL ANALYSIS

### A. Assignments of Error

#### 1. Appellant's First Assignment of Error

{¶ 15} In appellant's first assignment of error, appellant argues that the trial court erred, as a matter of law, when it found that the parties' agreement contained a typographical error. We disagree.

{¶ 16} Pursuant to the parties' agreement, there are two methods the owner may employ to terminate the construction contract, termination for cause, pursuant to section 14.1, and termination for convenience, pursuant to section 14.4.1 As previously noted, the trial court determined that appellant terminated the contract "for convenience" and that determination has not been challenged in this appeal. Section 14.1 provides as follows:

**§ 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE**

§ 14.4.1 Notwithstanding any other provisions of the Contract Documents, the Owner may, at any time, and without cause, before or after the Notice to Proceed, terminate for convenience. * * *. *The Owner shall pay the Contractor according to the terms of Section 13.1 of the Agreement and such payment shall be the Contractor's sole remedy under the Contract.* Under no circumstances will the Contractor be entitled to anticipatory or unearned profits, consequential damages, or other damages of any sort as a result of a termination or partial termination of the Contract under this Section.

(Emphasis added.) (Appellant's Brief at 16-17.)

{¶ 17} Section 13.1 of the contract does not speak to damages in the event of a termination for convenience. In fact, section 13.1 does not speak directly to the issue of damages at all. Rather, section 13.1 merely provides that "[t]he Contract shall be governed by the law of the place where the Project is located." (Sept. 22, 2021 Pls. Ex. at 50.)

{¶ 18} In BoMar's proposed findings of fact and conclusions of law, BoMar argued that the parties' agreement contained a typographical error and that the reference to section 13.1 in section 14.4.1 was mistaken. BoMar claimed that the parties intended section 14.4.1

to read as follows: "The Owner shall pay the Contractor according to the terms of Section 14.1.3."  Section 14.1 reads in relevant part as follows:

### § 14.1 TERMINATION BY THE CONTRACTOR

§ 14.1.1 The Contract may terminate the Contract if the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor. * * *.

§ 14.1.2 The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, * * *, repeated suspensions delays or interruptions of the entire Work by the Owner * * *.

§ 14.1.3 If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon fourteen (14) days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner *payments for Work executed, including reasonable overhead and profit and direct costs incurred by reason of such termination.*

(Emphasis added.)  (Appellant's Brief at 16.)

{¶ 19}  The magistrate agreed with BoMar and found as follows:

The Magistrate agrees with Defendants that reference to section 13.1 is a clear typographical error, as that section is inapplicable. Instead, Section 14.1 addresses how the contractor should be compensated when the contractor terminates the agreement for cause. Section 14.1.3 states, that the contractor shall be paid, "for Work executed, including reasonable overhead and profit, and direct costs incurred by reason of such termination."

(Jan. 8, 2020 Mag. Decision at 27.)

{¶ 20}  The trial court agreed with the magistrate and adopted the magistrate's decision as its own. In so doing, the trial court offered the following analysis:

Admittingly, as Plaintiff describes in this objection, this is initially confusing because the corrected typographical error results in being forced to analyze relief for Defendants under a section that is entitled "Termination by the Contractor" when the Agreement was technically terminated by the Owner. But, the Court must effect the logical meaning from the Agreement, and that meaning cannot be that Defendants would not be paid for the work it completed if Plaintiff terminated the Agreement for convenience. That would be a nonsensical result because it would allow the Owner to exceed the benefit of the bargain, which is not something the Contractor would rationally agree to. Courts are permitted to

> interpret a contract so as not to create a "manifest absurdity."
> *See* e.g., *Olmstead v. Lumbermens Mut. Ins. Co.,* 22 Ohio St.
> 2d 212, 216. One common source of potential absurdity in a
> contract is a typographical error. As such, when courts
> encounter a typographical error, they may accord a
> reasonable interpretation when extrinsic evidence is not
> necessary to accord the provision meaning. *See* e.g., *Triangle
> Props. v. Homewood Corp.,* 2013-Ohio-3926, ¶ 61.

(July 29, 2020 Decision & Order Adopting Mag.'s Decision at 15.)

{¶ 21} Here, the magistrate determined that the parties' agreement contained a typographical error in that the reference to section 13.1 in section 14.4.1 was mistaken. Accordingly, the magistrate reformed section 14.4.1 of the parties' agreement to read as follows: "The Owner shall pay the Contractor according to the terms of Section 14.1.3 of the Agreement and such payment shall be the Contractor's sole remedy under the Contract."

{¶ 22} " 'Reformation is available where it is shown that the written instrument does not express the true agreement entered into between the contracting parties by reason of mistake common to them.' " *Natl. City Real Estate Servs., L.L.C. v. Frazier*, 4th Dist. No. 17CA3585, 2018-Ohio-982, ¶ 27, quoting *Wagner v. Natl. Fire Ins. Co.,* 132 Ohio St. 405, 412 (1937). "Reformation is an equitable remedy that allows a court to change the language in a contract where the parties' true intentions have not been expressed due to a 'mutual mistake'—meaning a common mistake by all the parties to the contract." *Wells Fargo Bank Minnesota v. Mowery*, 187 Ohio App.3d 268, 2010-Ohio-1650 (4th Dist.). "[T]he remedy of reformation can be applicable even when a mistake has been caused by a unilateral drafting error." *DeMuesy v. Haimbaugh*, 10th Dist. No. 91AP-212, 1991 Ohio App. LEXIS 6407 (Dec. 31, 1991), citing *Snedegar v. Midwestern Indemn. Co.*, 44 Ohio App.3d 64 (1988). The purpose of contract reformation is not to create a new contract between the parties; rather, the purpose of reformation is to make the writing conform to the real intention of the parties. *Frazier* at ¶ 27.

{¶ 23} Appellant contends the trial court erred in reforming the parties' agreement because BoMar did not claim that section 14.4.1 contained a typographical error at trial, and no evidence was presented of the parties' intentions with regards to section 14.4.1. This court, however, has previously rejected the argument that a trial court is precluded from finding a typographical error in a written contract in the absence of extrinsic evidence to

support the finding. *See Triangle Properties, Inc. v. Homewood Corp.,* 10th Dist. No. 12AP-933, 2013-Ohio-3926, ¶ 61 ("We find no error in the trial court's resolution of this issue purely as a matter of interpretation without the need to examine extrinsic evidence. The single reference to August 21, 2007 was a typographical error.")

{¶ 24} In our view, the trial court adopted a reasonable interpretation of the parties' agreement in light of the obvious typographical error in section 14.1.1. Accordingly, we hold that the trial court did not err when it reformed section 14.1.1 of the parties' agreement to reflect the parties' true intentions.

{¶ 25} Moreover, even if the trial court had erred when it reformed the parties' agreement, our review of Ohio common law supports the trial court's award of damages. Under Ohio law, damages for breach of contract are based either on the non-breaching party's expectation interest, reliance interest, or restitution interest. *Father's House International, Inc. v. Kurguz,* 10th Dist. No. 15AP-1046, 2016-Ohio-5945, ¶ 22, citing Restatement of the Law 2d, Contracts, Section 344(c). Expectation damages vindicate the non-breaching party's "interest in having the benefit of his bargain." Restatement of the Law 2d, Contracts, Section 344(a). Expectation damages generally place the non-breaching party in the position it would have been in had the contract been fully performed. *See Kurguz at* ¶ 21-23*; Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.,* 10th Dist. No. 12AP-647, 2013-Ohio-3890, ¶ 29. *See also* Restatement of the Law 2d, Contracts, Section 346, 347. Such damages include future lost profits. *Alternatives Unlimited* at ¶ 30, citing *Doner v. Snapp*, 98 Ohio App.3d 597, 601 (2d Dist.1994). The expectation interest is generally measured by "(a) the loss in value to the injured party cause[d] by the breaching party's failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that the injured party avoided by not having to perform." Restatement of the Law 2d, Contracts, Section 347.

{¶ 26} Conversely, restitution damages vindicate the non-breaching party's interest in recovering the benefit conferred on the other party. *Kurguz* at ¶ 24. "If a sum of money is awarded to protect a party's restitution interest, it may as justice requires be measured by either (a) *the reasonable value to the other party of what he received in terms of what it would have cost him to obtain it from a person in the claimant's position*, or (b) the

extent to which the other party's property has been increased in value or his other interests advanced." (Emphasis added.) Restatement of the Law 2d, Contracts, Section 371.

{¶ 27} In our view, section 14.4.1 of the parties' agreement limits a contractor's recovery to restitution damages. Expectation damages are not available to a contractor where the termination is for convenience rather than for cause. Here, the trial court awarded restitution damages to BoMar equal to the amount BoMar had been billed by its subcontractors for work executed prior to termination, plus overhead and profit. (Sept. 22, 2021 Pls. Ex. at 4-6 and 19.) The trial court did not award damages to BoMar based on the future net profit BoMar would have earned had the agreement been fully performed. Accordingly, even if we were to find that the trial court erred when it determined that the reference to section 13.1 was a typographical error, and that BoMar's damages were to be determined in accordance with Ohio common law, the trial court limited BoMar's damages to restitution. Because BoMar's damages upon termination for convenience would have been the same had the trial court applied Ohio common law, appellant has not demonstrated prejudice.

{¶ 28} For similar reasons, we find no merit in appellant's claim that section 14.4.1, "termination by owner for convenience," prohibits an award of profit to BoMar. Section 14.4.1 provides in relevant part: "*Under no circumstances will the Contractor be entitled to anticipatory or unearned profits*, consequential damages, or other damages of any sort as a result of a termination or partial termination of the Contract under this Section." (Emphasis added.) In our view, the highlighted provision in section 14.4.1 prohibits a contractor from recovering expected or anticipated overhead and profit for work that it has yet to complete. BoMar's overhead and profit arising from work executed by BoMar's contractors prior to termination is not anticipatory or unearned. Thus, the trial court did not violate section 14.4.1 when it awarded damages to BoMar.

{¶ 29} For the foregoing reasons we overrule appellant's first assignment of error.

**2. Appellant's Second Assignment of Error**

{¶ 30} In appellant's second assignment of error, appellant contends that the trial court erred when it awarded damages to BoMar based upon a finding that BoMar was entitled to a 25 percent mark-up for overhead and profit, rather than the 5 percent figure referenced in the Cost Breakdown Worksheet. We agree.

{¶ 31} The parties submit the following stipulation relevant to the damages issue:

> 3. The original contract price was $5,172,701.00. After taking into account all agreed to change orders that were approved as of the date of termination, the contract price at the time of termination was $5,353,212.50. At the time of termination, other change orders remained in dispute or had otherwise not been approved.
>
> 4. Prior to BoMar's termination, [appellant] paid BoMar Contracting, Inc. a total of $2,370,677.55. Joint Exhibit A-1 is a list of the payment amounts and dates.
>
> 5. After BoMar's termination, [appellant] paid a total of $386,461.73 to subcontractors or materialmen, for work performed, and materials supplied, while BoMar Contracting, Inc. served as the general contractor on the construction project.
>
> 6. Between the beginning of the project and August 25, 2016, BoMar submitted 10 payment applications to [appellant] totaling $2,255,985.51.
>
> 7. Between August 25, 2016 and the date of termination, BoMar submitted several different revisions of an 11th Pay Application to [appellant], but as of the date of termination, Pay Application 11 had not been approved.
>
> 8. During the discussions relating to Pay Application 11, between Plaintiff, Defendant and Plaintiff's Lender, Liberty Bank, [appellant] made payments totaling $30,000 to BoMar's plumber, and a payment of $150,000.00 directly to BoMar towards the amount BoMar claimed was due on Pay Application 11.
>
> 9. Between the period of time covered by Pay Application 10 and BoMar's termination, BoMar received invoices from materialmen and subcontractors. Defendant's exhibits 3, 4, 5 and 6 are ledgers listing the invoices received in September, October, November and December 2016, respectively. Plaintiff stipulates that for evidentiary purposes only, these ledgers are admissible summaries of the invoices received. Because Plaintiff made numerous payments to unpaid subcontractors and materialmen of Defendant after Defendant's contract was terminated (see Stipulation No. 5), Plaintiff cannot stipulate that these invoices have not been paid, or that Defendant has any obligation to pay those invoices which have never been paid.

(Mar. 8, 2019 Stipulations at 1-2.)

{¶ 32} Appellant relies on the Cost Breakdown Worksheet in support of its claim that the parties agreement limits BoMar's overhead and profit margin to five percent. The Cost Breakdown Worksheet is attached to the Contract as exhibit 1 and incorporated into the parties' agreement pursuant to section 4.3.

{¶ 33} At oral argument, BoMar's counsel conceded that a five percent margin for overhead and profit was an agreed upon margin for purposes of the original contract price. BoMar maintains, however, that the five percent figure was subject to change and that the five percent margin did not apply to any work executed pursuant to changes ordered.

{¶ 34} In *Ohio Water Dev. Auth. v. W. Reserve Water Dist.*, 149 Ohio App.3d 155, 2002-Ohio-4393 (10th Dist.), this court set forth the relevant law of contract interpretation as follows:

> The interpretation of a written contract is a matter of law to be determined by the court. *Alexander v. Buckeye Pipe Line Co.* (1977), 49 Ohio St.2d 158, 3 Ohio Op. 3d 174, 359 N.E.2d 702, paragraph one of the syllabus. The paramount objective in construing such a written agreement is to ascertain the parties' intent. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920. The agreement must be given a just and reasonable construction which carries out the intent of the parties as evidenced by the contractual language. *Skivolocki v. East Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 Ohio Op. 2d 321, 313 N.E.2d 374, paragraph one of the syllabus. The parties' intent is presumed to reside solely within the language employed in the agreement. *Kelly v. Medical Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 Ohio B. 289, 509 N.E.2d 411, paragraph one of the syllabus. Words and phrases appearing in a contract which are not specifically defined therein should be given their common, ordinary, and usual meaning. *Monsler v. Cincinnati Cas. Co.* (1991), 74 Ohio App.3d 321, 329, 598 N.E.2d 1203. It is of course well-settled that the fact that parties may adopt conflicting interpretations of a contract between them, while involved in litigation, will not create ambiguity or a basis for unreasonable interpretation of the language and original intent of the parties where no such ambiguity should reasonably be found. *Steward v. Champion International Corp.* (C.A.11, 1993), 987 F.2d 732, 734. The question of whether ambiguity or uncertainty in the language of a contract requires resort to extrinsic evidence to ascertain the intent of the parties is a question of law for the court. *Latina*

> *v. Woodpath Development Co.* (1991), 57 Ohio St.3d 212, 214,
> 567 N.E.2d 262.

*Id.* at ¶ 25.

{¶ 35} At trial, BoMar maintained that the parties did not intend the 5 percent limit for overhead and profit to apply to all of BoMar's work on the project. BoMar produced testimonial evidence at trial in order to establish that a 25 percent margin for overhead and profit was contemplated by the parties. Appellant counters that, absent ambiguity in the relevant contract language, the trial court was precluded from considering extrinsic evidence of the parties' intent.

{¶ 36} BoMar relied on defendant's Exhibit 19 and the testimony of bookkeeper, Marie Arnold, in support of the damage's calculation. Defendant's Exhibit 19 shows that BoMar lost overhead and profit as a result of contract termination in the total amount of as $178,000. According to Arnold, the loss was calculated by adding a 25 percent markup for overhead and profit to the invoices submitted by BoMar's contractors for the work reflected on pay application number 11. When Arnold was asked about the 25 percent margin at trial she testified as follows:

> Q. Okay. Going back to Exhibit 19, the next line down is the $713,057.07. That is the total of the four months that are listed slightly to the left of that figure; correct?
>
> A. Yes.
>
> Q. Okay. Now, the next line applies an overhead and profit of 25 percent to that figure. Do you see where I'm referring?
>
> A. Yes.
>
> Q. Is 25 percent an industry standard number for overhead and profit?
>
> A. That is what we always customarily billed.

(Jan. 29, 2019 Tr. Vol. 2 at 566-67.)

{¶ 37} The magistrate found that a 25 percent margin for profit and overhead was reasonable in light of the industry standard:

> Defendants' witnesses established damages at trial. BoMar submitted that it is owed for its direct costs from September through termination in December of 2016, plus reasonable profit and overhead. Both Ms. Arnold and Mr. Myers testified that a 25% markup for profit and overhead is standard in the

> industry and customarily billed. No other witness presented evidence to the contrary. Therefore, as is set forth in Defendants' Ex 19, the total owed to plaintiff for the project is $3,147,306.85. Against this, the parties have stipulated that plaintiff should be credited $2,757,139.28, leaving a balance owed to the defendant of $390,167.57.

(Jan. 8, 2020 Mag.'s Decision at 27.)

{¶ 38} The trial court adopted the magistrate's findings of fact and conclusions of law as its own. Based largely on Arnold's testimony, and the absence of rebuttal evidence, the trial court found that the parties agreed to a 25 percent margin for overhead and profit.

{¶ 39} We do not read Arnold's testimony as broadly as the magistrate and the trial court. In our view, Arnold testified only that she customarily adds 25 percent to the invoices submitted by BoMar's subcontractors to account for overhead and profit. Her testimony does not establish an industry standard.[2] Moreover, "[w]hen the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Shifrin v. Forest City Enter., Inc.,* 64 Ohio St.3d 635, 638 (1992), citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 246 (1978). It is "[o]nly when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Shifrin* at 638, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987).

{¶ 40} In adopting the magistrate's decision, the trial court reasoned that the parties did not intend the five percent margin for overhead and profit to apply to the numerous and extensive modifications to the work that occurred during construction. We find no such intent expressed in the parties' agreement. In fact, section 7.3.8 specifically addresses the manner of payment to a contractor where the parties cannot agree on change order pricing. That section of the agreement contains several blank spaces where the parties are prompted to insert the contractor's margin for overhead and profit. The parties did not insert any figures in those blank spaces. Had the parties intended to provide a greater margin for overhead and profit when BoMar executed work pursuant to a change directive,

---

[2] Appellant argues alternatively that Arnold was not competent to offer testimony as to the industry standard for overhead and profit. Having determined that Arnold offered no such testimony, appellant's competency argument is moot.

the parties would certainly have provided for a different rate in section 7.3.8. Rather than doing so, the parties left the space designated for overhead and profit blank. In the absence of a contrary expression of the parties' intent in the written agreement, a five percent margin for overhead and profit applied to all work performed on the project.

{¶ 41} Moreover, section 1.1 of the General Provisions to the parties' agreement provides the method by which the parties' may modify the original agreement as follows: "A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect." (Sept. 22, 2021 Pls. Ex. at 11.) Accordingly, the contract provides that any subsequent modification to the agreed upon margin for overhead and profit must be in writing.

{¶ 42} Here, BoMar introduced testimony that, if believed, contradicted the plain language of the parties' agreement with regards to the contractor's margin for overhead and profit. The trial court, in awarding damages to BoMar, relied on this testimony, disregarded the language in the contract, and applied a 25 percent profit margin. In so doing, the trial court impermissibly created a new contract by finding an intent not expressed in the language employed by the parties. *Shifrin* at 638. Accordingly, we hold that the trial court erred, as a matter of law, when it determined that the parties orally agreed to apply a 25 percent margin for overhead, rather the five percent set out in the parties' agreement.

{¶ 43} We acknowledge that BoMar's margin for overhead and profit could have been addressed more conspicuously in the parties' agreement. Nevertheless, "[i]n interpreting a contract, we are required, if possible, to give effect to every provision of the contract." *Sunoco, Inc. v. Toledo Edison Co.,* 129 Ohio St.3d 397, 408 (2011). Here, the contractor's margin for overhead and profit is set forth in the contract documents and there is no ambiguity or uncertainty as to five percent margin for overhead and profit. Consequently, there was no reason to consider evidence outside the written agreement to discern the parties' intent, and no need for appellant to rebut any such evidence.

{¶ 44} BoMar argues that because section 14.1.3 permits an award of "reasonable overhead and profit," the trial court was permitted to look outside the contract to determine what was reasonable. As previously discussed, because BoMar's margin for overhead and profit is set forth in the parties' agreement, the trial court had no reason to look beyond the

four corners of the written agreement to determine reasonable overhead and profit. BoMar's argument erroneously assumes that the five percent margin for overhead and profit agreed to by the partiers is not reasonable. This court, however, "will not rewrite the contract simply to relieve [a party] of what he perceives as a bad bargain." *Hodge v. Prater*, 10th Dist. No. 13AP-838, 2014-Ohio-3152, ¶ 18, citing *Impressions Bldg., LLC v. Heart Specialists of Ohio, Inc.*, 10th Dist. No. 06AP-275, 2006-Ohio-4719, ¶ 9, citing *Ervin v. Garner*, 25 Ohio St.2d 231, 239-40 (1971). For the foregoing reasons, appellant's second assignment of error is sustained.

### 3. Appellant's Third Assignment of Error

{¶ 45} In appellant's third assignment of error, appellant argues that the trial court erred when it awarded BoMar 25 percent profit on outstanding invoices. We disagree.

{¶ 46} The trial court determined that appellant terminated the contract for convenience, not for cause. On the date of termination, pay application 11 had been submitted to appellant by BoMar, but it had not yet been approved. BoMar had not yet made payment to the subcontractors for the work reflected in pay application 11.

{¶ 47} The trial court adjusted the damages awarded to BoMar to account for the direct payments appellant made to BoMar's subcontractors after termination. However, because the termination was for convenience, appellant's direct payments to BoMar's subcontractors for work executed prior to the termination did not relieve appellant of the contractual obligation to pay BoMar profit it had earned. BoMar was entitled to restitution damages for executed work.

{¶ 48} Nevertheless, consistent with our ruling on appellant's second assignment of error, we hold that the trial court erred when it added 25 percent margin for overhead and profit rather than the 5 percent set forth in the parties' agreement. Accordingly, we sustain appellant's third assignment of error in part and overrule it in part.

### V. CONCLUSION

{¶ 49} Having overruled appellant's first assignment of error but having sustained appellant's second assignment of error and appellant's third assignments of error, in part, we affirm the judgment of the Franklin County Court of Common Pleas, in part and reverse in part, and remand the matter for further proceedings consistent with this decision.

*Judgment affirmed in part and reversed in part.*

SADLER and BEATTY BLUNT, JJ., concur.

————————————